MRS. PEARL BOUSFIELD, employee, claimant-appellant, v. SISTERS OF MERCY, employer, and HARTFORD ACCIDENT & INDEMNITY COMPANY, insurance carrier, appellees.

No. 49290.

(Reported in 86 N.W.2d 109)

NOVEMBER 12, 1957.

James G. McDowell, Jr., of Des Moines, for appellant.

Smith, Peterson, Beckman & Willson, of Council Bluffs, for appellees.

LARSON, J.—This is a proceeding under the Workmen's Compensation Law, chapters 85 and 86, Code of Iowa, 1950 and 1954, by an injured employee seeking increased compensation pursuant to section 86.34, Code of Iowa, 1954. Following the hearing the deputy commissioner, acting for the commissioner, made a finding and awarded claimant an additional twenty weeks' compensation with interest from July 15, 1952, which was appealed to the district court by defendant-employer. From a judgment setting aside the commissioner's award and dismissing her application for review-reopening, claimant-employee appeals to us.

It is claimant's contention that the district court erred in reversing the commissioner's award in that it was based on sufficient competent evidence introduced by her disclosing an aggravated condition of her injury not taken into account in the former findings, and that such findings and award were binding upon the district court.

Claimant, Mrs. Pearl Bousfield, sustained a compensable injury August 6, 1950, as a nurse's aid. While pulling on a bed sheet she developed a sudden and severe pain in her lower back, which resulted in hospitalization for a period of two weeks. She has never returned to her employment. Radiating pains developed in her legs and she underwent an operation for a herniated disc in October 1951. For some twelve months thereafter her pains lessened. However, as she resumed domestic activity the pains became more and more severe, extending into her lower back, buttocks, and right leg. They came and went, lasting several days at a time. As they became more severe and more frequent she asked for and received another examination by a neurological surgeon, Dr. Wilbur A. Mulig, furnished by defendant. He made observations and findings upon which he based an opinion that she had "about 15 per cent" disability, which was not unusual as a result of an operation on a herniated disc, and by considering her history since 1950 he believed her disability at "about 25 per cent total disability." At the time of his examination she was not in one of her severe episodes and he did not think surgery was yet indicated. Doctor Mulig further testified, according to her history one of the more severe episodes occurred in September 1954, lasting three weeks, requiring her to go to bed, and another in February 1955 required her to take to her bed for one week. The last one in April 1955 lasted four weeks. They were of the nature that a jarring hurt her back, as did moving her arms, and even talking became too much of an effort because of the pain. Between spells she had symptoms of pressure in the lower back level rather constantly, which was gradually getting worse and was aggravated by bending over or any other physical activity. Coughing would cause severe pain. Her home work became more limited. His examination and tests given indicated "a herniation of the disc between the fourth and fifth lumbar verte-

brae, rather than the common location between the fifth lumbar and first sacral." Even these helps to diagnosis he stated are not absolute, but what he found "would suggest the possibility of the disc being herniated at a higher level." It would suggest "a disc in partial remission." He called the condition a "nucleus pulpesis" and said, "Discs that bulge out and compress the nerve root will go through episodes of being worse and being better. Possibly the swelling goes down and they slip back in place and the patient will get along for a while perhaps without symptoms or with them, and will get better and then will get worse again." Another operation was a possibility, though not indicated at that time.

These results must make it clear there were some unexpected results following the 1951 operation, results which no doubt the original agreed award did not contemplate. At least the subsequent and recurring episodes were verified by the examination and indicate an unexpected and unsatisfactory condition after the original operation. There was clear evidence of an aggravated weakness and the expected clearing up did not occur after the 1952 approved award. Mrs. Bousfield testified the condition has worsened to the extent that she cannot go up and down stairs, scrub or wax floors, or do gardening without bringing on a severe attack. She must go to bed to get temporary relief. She said her condition "gets worse as time goes on. The pain is getting more severe and lasts longer, the attacks are closer together."

We have perhaps set forth more of this evidence than is necessary, but in view of the district court's finding there was no substantial evidence of a change, a finding with which we disagree, we feel such testimony should be set out in some detail.

On the 15th day of July, 1952, a memorandum of agreement was filed with and approved by the Iowa Industrial Commissioner. The original award, Form-5 Report, shows compensation began August 6, 1950, and ended July 5, 1952, and discloses 100 weeks' compensation was paid claimant as a result of her permanent partial disability. While the basis of settlement does not indicate whether 20 weeks were included therein as a healing period, the departmental file which was introduced in these proceedings discloses correspondence with the insurance carrier stating the basis of settlement was 20% permanent partial disability.

Twenty per cent of the total disability maximum of 400 weeks would amount to 80 weeks. Eighty weeks plus twenty weeks healing period would account for the 100 weeks allowed, and, unless other explanations are accepted, must have been the extent of the intended award. Receipts indicate the payment for 100 weeks was made.

■ I. In passing upon the question as to the sufficiency of the competent evidence to warrant the finding and award of the commissioner in such applications, we must consider the evidence in the light most favorable to claimant. Rose v. John Deere Ottumwa Works, 247 Iowa 900, 903, 76 N.W.2d 756, and cases cited therein.

■ II. This court has repeatedly held that where the facts are in dispute, or where reasonable minds may differ on the inferences to be drawn from the proven facts and circumstances, the findings of the commissioner in such matters are conclusive. If the evidence presents a question which should have been submitted to a jury, if the trial were before a jury, then the court is bound by the findings of the commissioner. Henderson v. Iles, 248 Iowa 847, 82 N.W.2d 731, and cases cited therein; Hassebroch v. Weaver Construction Co., 246 Iowa 622, 67 N.W.2d 549; Stowe v. Booth & Olson, Inc., 245 Iowa 1374, 1377, 66 N.W.2d 382; Dailey v. Pooley Lumber Co., 233 Iowa 758, 10 N.W.2d 569.

Code section 86.34 provides: "Any award for payments or agreement for settlement * * * where the amount has not been commuted, may be reviewed by the industrial commissioner * * * at the request of the employer or of the employee at any time within three years from the date of the last payment of compensation * * *, and *if on such review the commissioner finds the condition of the employee warrants such action, he may end, diminish, or increase the compensation so awarded or agreed upon.*" (Emphasis supplied.) The right of appeal is further provided therein.

There is no contention herein that the provisions of this statute are not applicable. In the Rose v. John Deere case, supra, at page 905 of 247 Iowa, we said: "Section 86.34 is very broad and general in its terms. It authorizes relief 'if * * * the commissioner finds the condition of the employee warrants such ac-

tion' ", and announced that the language used in Stice v. Consolidated Indiana Coal Co., 228 Iowa 1031, 1035, 291 N.W. 452, construes this language somewhat more narrowly than intended, where it said the statute ordinarily is applicable only where there is some change in the employee's condition which came about through his injury, since the award was made. This change, we think, includes a change in the percentage of disability involving permanent partial disability. In the Stice opinion at page 1036 of 228 Iowa, page 455 of 291 N.W., we indicate an injured employee is entitled to relief under statutes similar to 86.34 upon " 'substantial proof of an aggravated condition of the old injury not taken into account in the former findings * * *.' " We referred to this matter in Rose v. John Deere Ottumwa Works at page 905 of 247 Iowa. To the same effect is 71 C. J., Workmen's Compensation Acts, section 1401. Also in Oldham v. Scofield & Welch, 222 Iowa 764, 767, 266 N.W. 480, 481, 269 N.W. 925, we held: "Where an employee suffers a compensable injury and thereafter returns to work and, as a result thereof, his first injury is aggravated and accelerated so that he is greater disabled than before, the entire disability may be compensated for [citations]."

It further seems well settled in other jurisdictions that increased incapacity of the employee, due to the original injury, subsequent to the making of the first award entitles the employee to additional compensation under such statutes as 86.34. See 58 Am. Jur., Workmen's Compensation, section 501; 71 C. J., Workmen's Compensation Acts, section 1405; Annotations 122 A. L. R. 550, 582 et seq.

■■■ We have often stated that the workmen's compensation statutes must be liberally construed. Day v. Town Club, 241 Iowa 1264, 45 N.W.2d 22; Jacques v. Farmers Lbr. & Sup. Co., 242 Iowa 548, 47 N.W.2d 236; section 85.1, Code of 1950. But it is also true that unless there is more than a scintilla of evidence of the increase, a mere difference of opinion of experts or competent observers as to the percentage of disability arising from the original injury would not be sufficient to justify a different determination by another commissioner on a petition for review-reopening. Such is not the case before us, for here there was substantial evidence of a worsening of her condition not contemplated at the time of the first award. The commissioner's finding

of the ultimate fact that she was 25% permanently partially disabled at the present was justified and his finding of the ultimate fact is sufficient to sustain the award, it not being necessary to set forth the minor facts leading to the determination of the ultimate one. 71 C. J., Workmen's Compensation Acts, section 1061; Annotations 146 A. L. R. 123; Rose v. John Deere Ottumwa Works, supra; Stice v. Consolidated Indiana Coal Co., supra; Bever v. Collins, 242 Iowa 1192, 1195, 49 N.W.2d 877, 879; 71 C. J., Workmen's Compensation Acts, section 1401; 58 Am. Jur., Workmen's Compensation, section 501; Annotations 122 A. L. R. 550, 582 et seq.

■ III. We are further satisfied the commissioner's 25% industrial disability determination was a finding of increased disability. In the matter before us the claim is not from temporary disability to permanent partial, but for a greater degree or percentage of permanent partial disability from that for which she was compensated. There is no material distinction. Degree as well as type is contemplated in the statute. Proof as to the subsequent condition is the important factor. It is claimant's position that she offered substantial competent evidence that her physical disability resulting from the original injury was not 20% as originally believed, and upon which she received compensation, but now proves to be 25%. Defendant-employer's contention before the commissioner, before the district court, and now before us is that the evidence did no more than confirm the original findings of disability and that no competent facts were related to confirm a change in claimant's condition. This was the basis of the district court's judgment, but one in which we cannot agree. Some progressive deterioration was related by the claimant and confirmed by the doctor. It was sufficient evidence to permit the commissioner to determine whether the percentage of permanent partial disability had actually been underestimated in the former award. The doctor's opinion that the disability considering her history was 5% in excess of the 20% apparently originally determined after the first operation justifies the review and reopening.

IV. Perhaps most of the confusion in this case resulted from a dispute as to whether or not claimant was entitled to and

did originally receive healing period compensation of 20 weeks. Claimant's injury was such as to entitle her to a healing period. Section 85.33, Code of 1950, provided:

"* * * In the event the employee has suffered an injury causing permanent partial disability for which compensation is payable under the provisions of section 85.35, the employer shall pay to the employee compensation for a healing period which shall not be more than twenty-five percent of the period during which weekly compensation is required to be paid under the provisions of said section, or for a period of not more than twenty weeks, whichever is the lesser."

Section 85.35, Code of Iowa, 1950, provided:

"Compensation for permanent partial disability shall begin *at the termination of the healing period provided in section 85.33 and shall be based upon the extent of such disability,* and for all cases of permanent partial disability included in the following schedule compensation shall be paid as follows:

"* * * 20. In all other cases of permanent partial disability, the compensation shall bear such relation to the periods of compensation stated in the above schedule as the disability bears to those produced by the injuries named in the schedule." (Emphasis supplied.)

Under the language of these statutes she was entitled to a healing period of twenty weeks. Both parties at the commencement of this action believed she *had* received such compensation. We are not convinced by the defendant's explanation that the 100 weeks granted under the original award was an error predicated upon figuring 500 weeks total disability at 20% instead of 400 weeks in effect when the injury occurred. It is true a statutory change in the number of weeks of compensation for total disability had occurred during her disability, but no evidence appears to indicate this fact was overlooked in the settlement. In this connection we note that if the original award had been for 25% as defendant contends, 25% of 500 weeks would have been 125 weeks. She received, however, 100 weeks, which could only be 25% of 400 weeks, or 20% of 400 weeks plus a 20-week healing period. We conclude it was the latter.

It does appear that the deputy commissioner who tried the review-reopening matter referred to the 20 additional weeks he

granted claimant as healing period compensation which he said claimant should have had at the time of the original agreement. Thus he granted interest on the additional 20 weeks' compensation from July 15, 1952, at 6%, which cannot be allowed to stand. Section 85.30, Code of 1950, provides: "* * * there shall be added to such weekly compensation payments, interest at six percent from date of maturity." The date of maturity for the additional 20 weeks could not be determined until claimant had applied for same, or a determination made thereof. In this case interest can only be allowed from October 5, 1955, when the commissioner found her entitled to the increased compensation.

V. There was no prejudice as a result of the commissioner's designation of the additional amount as compensation for a healing period, with the exception of the date from which interest was due claimant. The ultimate facts found were that claimant was entitled to an increase of compensation to the extent of 20 weeks at $22.50 per week, and that she suffered a 5% greater industrial disability than originally determined in the approved agreement. By coincidence it was exactly the same period of time as the healing period to which she was entitled under her disability.

The commissioner, after taking into consideration all the testimony and the departmental records, and the reasonable and proper inferences to be drawn therefrom, found as follows:

"(1) That the claimant sustained an injury on August 6th, 1950, arising out of and in the course of her employment resulting in 25% permanent partial disability of the body as a whole.

"It is further found and held as a matter of law that the claimant is entitled to the statutory healing period of twenty weeks.

"WHEREFORE, the defendant employer and insurance carrier are hereby ordered to pay compensation to the claimant for a healing period of twenty weeks, at the rate of $22.50 per week, together with 6% interest on accrued payments from July 15th, 1952, as provided by law, and in addition thereto are further ordered to pay the costs of this hearing, including the court reporter's fee."

Clearly it was the commissioner's thought that if she had not received her just compensation for a healing period, that sum would be needed to compensate her fully for the 25% industrial disability she suffered.

Inasmuch as the commissioner's award uses the words "for a healing period of twenty weeks, at a rate of $22.50 per week, together with 6% interest on accrued payments from July 15, 1952 * * *", they should be altered to provide that the defendant-employer and the insurance carrier are hereby ordered to pay additional or increased compensation to the claimant of 20 weeks at the rate of $22.50 per week, together with 6% interest from October 5, 1955, and for costs.

The commissioner's finding was based on sufficient competent evidence, and although his designation that the 20 weeks represented an unpaid healing period was erroneous, it was not prejudicial except for the award of improper interest. The judgment of the district court must therefore be reversed and the award of the commissioner reinstated with the reduction of interest above noted.—Reversed and remanded with instructions.

All JUSTICES concur except PETERSON, J., who takes no part.