RICHARD ZIEGLER, appellant, v. UNITED STATES GYPSUM COMPANY, INC., appellee.

No. 50129.

(Reported in 106 N.W.2d 591)

DECEMBER 13, 1960.

REHEARING DENIED FEBRUARY 8, 1961.

Bradshaw & Crawford, of Fort Dodge, for appellant.

Burnquist, Helsell, Burnquist & Kersten, of Fort Dodge, and Wendell J. Brown, of Chicago, Illinois, for appellee.

LARSON, C. J.—This is a most unusual case. The claimant's principal contention is that there was sufficient competent evidence before the commissioner that he suffered a new injury or an aggravation of a pre-existing infirmity when he returned to work at defendant's plant May 21 to 27, 1957, to justify a finding by the commissioner that he was temporarily disabled and was entitled to receive compensation benefits for this period of disability, separate and distinct from the claim for disability originally suffered in an accident at defendant's plant May 16, 1956, caused by a third party tort-feasor. The deputy commissioner and the industrial commissioner found for claimant. The district court reversed. We disagree.

The issues submitted in the appeal to the district court and here are: (1) Did the commissioner act in excess of his powers?

(2) Did the facts found by the commissioner support the decision and order? (3) Is there sufficient competent evidence in the record to warrant the making of the decision and order? Section 86.30, Code, 1958. Principal consideration was directed to the latter issue.

■ I. In order for claimant to obtain compensation for his alleged temporary disability following the May 27, 1957, event, it is necessary for him to prove by a preponderance of the competent evidence that the claimed temporary disability occurred while in the course of his employment during the six days he had attempted to return to light work. It was his burden. Almquist v. Shenandoah Nurseries, 218 Iowa 724, 728, 254 N.W. 35, 94 A. L. R. 573, and cases cited therein; 58 Am. Jur., Workmen's Compensation, section 438, page 859. However, it is the industrial commissioner who weighs the evidence, not the courts. They only examine it to determine whether it is sufficient to sustain the factual conclusion of the commissioner. Belcher v. Des Moines Elec. Lt. Co., 208 Iowa 262, 225 N.W. 404. In passing upon the question as to the sufficiency of the competent evidence to warrant a finding of fact of this nature, we must consider the evidence in the light most favorable to claimant. Bousfield v. Sisters of Mercy, 249 Iowa 64, 68, 86 N.W.2d 109. Wherever, from the facts expressly found, others may be fairly inferred which will support the award, such inferences will be drawn. Rose v. John Deere Ottumwa Works, 247 Iowa 900, 907, 76 N.W.2d 756, and cases cited therein; section 86.18, Code, 1958.

■ II. This court has repeatedly held that where the evidence is in dispute or where reasonable minds may differ on the inferences to be drawn from the proven facts and circumstances, the findings of the commissioner are conclusive. If the evidence presents a question which should be submitted to a jury, if the trial were before a jury, then the court is bound by the finding of the industrial commissioner. Almquist v. Shenandoah Nurseries, supra; Henderson v. Iles, 248 Iowa 847, 853, 82 N.W.2d 731, and cases cited therein. But if, as contemplated by the statute, section 86.30, Code, 1958, the evidence and reasonable inferences that may be drawn therefrom do not

sustain the conclusion reached by the industrial commissioner, the courts may set aside, modify or reverse his ruling. Volk v. International Harvester Co., 252 Iowa 298, 106 N.W.2d 649; Tunnicliff v. Bettendorf, 204 Iowa 168, 170, 214 N.W. 516; Enfield v. The Certain-Teed Products Co., 211 Iowa 1004, 233 N.W. 141. Thus we must examine the evidence present here, which admittedly is largely undisputed.

The case has unusual aspects. While it seems all parties agree that the claimant suffered a serious injury while in the course of his employment with defendant on May 16, 1956, when he was involved in a switching accident and pinned between the end of a railroad car and the side of a trackmobile, they do not agree as to the cause of claimant's inability to continue working for the employer after his return May 21, 1957. Claimant contends the tasks performed while in defendant's employ on May 27, 1957, aggravated his previous injury and further extended his disability. The defendant-employer, on the other hand, contends the evidence discloses no new injury and no aggravation of his pre-existing impaired physical condition.

Under the record we find claimant, Richard Ziegler, while in the course of his employment as a crane operator on May 16, 1956, was seriously injured and received compensation benefits from defendant until he returned to work May 21, 1957. They were later extended to cover the period from May 27, 1957, until July 15, 1958. In addition to a broken nose, lacerations, and torn back muscles, a close examination of the X rays disclosed he had suffered compression fractures of the eleventh and twelfth thoracic and the first lumbar vertebrae. Apparently he suffered other undetected back injuries. At that time he was attended by Dr. Herbert Kersten and Dr. F. L. Knowles. They applied a cast. He wore it until October 1956 when it was replaced by a back brace, which he used until the following April or May. This treatment healed the fractured vertebrae but did nothing to help what was believed to be soreness in his back muscles. Pain in various degrees persisted. Dr. Roy O. Sebek examined claimant in March 1957 and found certain areas of pain which were not normal. He said: "There were two different levels where I found the original injury to the spinal

column. The twelfth thoracic is where he had this compression, and the first sacral is the level where he has the bulged disc. Deep pressure is painful over the mid and low back areas." He also found pain in certain leg motions and a "mild vague tenderness over the right scapular area." This right scapular area is the shoulder blade in the back.

Nevertheless, and pursuant to Doctor Kersten's advice that light work would be beneficial, claimant testified he returned to work for defendant May 21, 1957. His first task was to sweep the floors and do general clean-up work. The last two or three days he worked on the fifth floor pushing stucco into a bin when part of that in the dump kettles did not fall in the opening. He used a rake or hoe for that purpose, and it involved pushing and pulling a thirty-pound rake. He also used a rubber-tired wheelbarrow to collect and dump excess stucco. He did not fill the wheelbarrow, but loaded about fifty pounds per trip. He had pains from the start but "it just kept getting worse right along, really noticed it when I picked up the wheelbarrow." He also stated, "It was during the tipping operation that I noticed the pain." On May 27, 1957, the last day he worked, he was having quite a little trouble with his back and went down to first aid for a heat treatment. As usual, he had trouble climbing the stairs and when "I went to lift up on the wheelbarrow I noticed a terrific pain down my spine, down my legs." He then went downstairs about 10:30 a.m., did some cleaning with a whisk broom, and asked to get off at noon.

The next day Doctor Sebek sent him to Lutheran Hospital to reduce the pain in his back so he could be examined. Doctor Sebek stated that in his opinion claimant was not then suffering from any pain from the injury he had previously had to the eleventh and twelfth thoracic vertebrae. It had healed, but he thought the current pain came from a bulged disc at the fifth lumbar level. He said that "as the bulge increases you usually get more distinct pain down the bones." He did not say when or how claimant received the injury causing the disc to bulge, but strongly inferred that the condition had been aggravated by the work claimant had been doing at defendant's plant. On the other hand, it is not difficult to draw an inference that

the original accident was the cause of the original damage to this disc. It may well have been herniated, ruptured and deteriorated prior to the return to work May 21. However, regardless of the extent of this injury, the evidence is clear and undisputed that there was some injury in that area as a result of the accident May 16, 1956. The troublesome question is: Was the condition shown to be such that it alone disabled claimant when he attempted to perform any tasks? In other words, to what extent did the undiscovered disc injury disable claimant? Was there evidence of an aggravation of that injury? Did the aggravation, if any, cause further disability of claimant? Defendant offered no evidence on these issues, but assumed claimant remained disabled from the original injury and did not carry his burden to prove the contrary.

Under the usual case of this kind a simple application to revalue the disability resulting from the first injury might be made, under the provisions of section 86.34, Code, 1958, which provides: "Any award for payments * * * may be reviewed * * * and if on such review the commissioner finds the condition of the employee warrants such action, he may end, diminish, or increase the compensation so awarded * * *." Bousfield v. Sisters of Mercy, supra, 249 Iowa 64, 86 N.W.2d 109. Claimant did not elect this remedy for a very obvious reason, i.e., to escape subrogation rights of defendant, established by a recovery in a tort action.

While such a review could provide added compensation for the increased disability shown, this compensation would be chargeable to the original injury and not to a new cause. Claimant had procured a $37,500 settlement after obtaining a judgment against the Fort Dodge, Des Moines & Southern Railway Company, the third party tort-feasor involved in the original injury. The defendant had filed its lien and asked subrogation rights to the extent of the sums paid claimant under Workmen's Compensation. Claimant refused to release all claims against defendant, and $20,000 was placed in escrow pending the outcome of this dispute. If the commissioner's determination is upheld, the compensation paid or payable due to the alleged aggravation or new injury of May 27, 1957, will not be recover-

able, for the proximate cause of this disability would be the impairment suffered on the latter date, not that on May 16, 1956. Thus this case must be considered as though defendant was, in fact, a new and different employer of the injured claimant, and the injury a new injury.

We are convinced there was such evidence before the deputy commissioner to justify his later commissioner-approved finding that claimant's work did aggravate the impaired condition of his back, that it caused him temporary disability for a period of 44 weeks, and that he was entitled to further medical and hospital expenses to relieve that aggravated condition.

■ III. If his employment from May 21 to 27, 1957, resulted in a personal injury in the nature of an aggravation to his already impaired physical condition, he is entitled to compensation to the extent of that injury. Hanson v. Dickinson, 188 Iowa 728, 176 N.W. 823; Oldham v. Scofield & Welch, 222 Iowa 764, 266 N.W. 480. See The Iowa Law of Workmen's Compensation, by Boyd and others, Research Series No. 22, September 1960, State University of Iowa, pages 31–38 inclusive, and many Iowa cases cited therein. If the impairment suffered may be found in the performance of the employer's work, and there is competent evidence of a causal connection, claimant **may recover to the extent of that impairment.**

■ IV. It is, of course, well settled that when an employee is hired, the employer takes him subject to any active or dormant health impairments incurred prior to this employment. If his condition is more than slightly aggravated, this resultant condition is considered a personal injury within the Iowa law. Jacques v. Farmers Lumber & Supply Co., 242 Iowa 548, 552, 47 N.W.2d 236; Farrow v. What Cheer Clay Products Co., 198 Iowa 922, 200 N.W. 625; Belcher v. Des Moines Electric **Light Co., 208 Iowa 262,** 266, 225 N.W. 404, 406; 25 Iowa Law Review 177, 178; 1 Larson, Workmen's Compensation Law, sections 12, 12.20; Riesenfeld & Maxwell, page 222, note 1; Hanson v. Dickinson, supra, 188 Iowa 728, 176 N.W. 823.

Here the evidence shows claimant had recovered from the compression fractures, and that in other areas where some pain existed the ailments were quite dormant and undisturbed on

May 21, 1957. After his return to work, the pulling, pushing and lifting, although not exceedingly heavy perhaps, appeared to sufficiently "light up" and aggravate the injury, identified as a damaged disc, so that he required hospitalization and special therapeutic treatment. Doctor Sebek testified that such action by weak muscles in Ziegler's back could have caused the bulge in the disc, but whether it caused the bulge or not, improper pushing and pulling would cause it to bulge more, and the more it bulged the greater the pain and eventual disability. He said the work claimant was doing, unless done just right, would cause a strain on his back muscles, and that in turn increases the pressure on the affected disc and it must go someplace, resulting in an increased bulge. Furthermore, the doctor testified he so considered and treated this impairment, successfully reducing it to the extent that claimant may now again do light work if he can find it with that infirmity.

It is true Doctor Sebek believes the only real cure for this disability is an operation, removal of the ruptured disc, and a spinal fusion, for even now claimant is subject to another such aggravation of this physical impairment.

■■ V. It was, of course, necessary for claimant to show by sufficient competent evidence that there was a direct causal connection between the exertion of the employment and the injury upon which an award could be made. If the evidence offered is such that reasonable minds may conclude from the efforts expended the aggravation would result, the commissioner's decision must be upheld. Like a jury verdict, it may be reviewed only if there is insufficient evidence to support the commissioner's findings. Section 86.30, Code of Iowa, 1958. See The Iowa Law of Workmen's Compensation, supra, pages 104–105. We think there is much more here than a scintilla of evidence of the causal connection. The direct causal connection between the personal injury and the employment is furnished by claimant and by Doctor Sebek. It is said that if the rational mind is able to trace the resultant personal injury to a proximate cause, which is set in motion by the employment and not by some other agency, then recovery must follow.

This formula results, naturally, in some fine and close decisions, and perhaps here if we were to originally decide the

matter we would agree with the trial court that the industrial disability claimant now suffers pre-existed and only became manifest when he returned to work, but we do not weigh the evidence. We only consider its sufficiency here. It is true, under the evidence submitted, the finder of fact could have concluded that the claimant was too disabled on May 21 to work, that he had never received treatment of the injury to his disc, and that regardless of the tasks he might undertake, the pain would be disabling until the injury was reduced by the operation suggested by Doctor Sebek. He did not do so, and we think there is ample evidence that the tasks performed on May 27, 1957, and the prior days after his return to work, resulted in such a physical impairment that claimant could not continue his work and had to seek medical and hospital aid to reduce the pain from it. If the result was at least a temporary disability, it must be conceded the commissioner was acting within his powers and that these ultimate facts support his award herein.

There are a host of cases throughout the country, including Iowa, where dormant disease or physical ailments have been aggravated by working conditions, and compensation was allowed. Hanson v. Dickinson, supra, 188 Iowa 728, 176 N.W. 823, and cases cited therein; Riesenfeld & Maxwell, Notes, pages 222–224; and cases from many other jurisdictions.

We conclude there was substantial evidence upon which the commissioner could find a direct causal connection between the tasks claimant was performing and the aggravation of his undisclosed impairment, a herniated, ruptured or bulged disc.

VI. Having found that there was sufficient competent evidence upon which the commissioner could make his award, his decision in this matter of March 31, 1959, is re-established with the exception that the balance of funds held in escrow may be released to claimant only upon his waiver of any further right to benefits due or which might be found due him from defendant as a result of injuries received in the May 16, 1956, accident.

The judgment of the trial court, therefore, must be reversed. —Reversed.

All JUSTICES concur.