DICK YEAGER, claimant-appellee, v. FIRESTONE TIRE & RUBBER COMPANY and LIBERTY MUTUAL INSURANCE COMPANY, appellants.

No. 50448.

DECEMBER 12, 1961.

Steward, Crouch & Hopkins, of Des Moines, for appellants.

Duffield & Pinegar, of Des Moines, for appellee.

GARFIELD, C. J.—Plaintiff-Yeager, an employee of defendant, Firestone Tire & Rubber Company in Des Moines, was awarded workmen's compensation by the industrial commissioner for disability resulting from an injury in the course of his employment. The deputy commissioner as sole arbitrator found the disability was permanent in nature but partial in extent, to the amount of 40%, and made an award on this basis.

Following a hearing before the commissioner upon the petition for review by the employer and its insurance carrier at which additional evidence was submitted, the disability was found to be permanent in nature but 25% of total. As modified and reduced on this basis, the award was affirmed. Upon appeal to the district court by the employer and its insurer, the commissioner's award was affirmed. The employer and insurer have appealed to us from the district court's order.

Four errors are assigned for reversal. The third and fourth may be combined. It is said the district court erred in affirming the commissioner's award: (1) in that there is no substantial evidence the condition of which plaintiff complains is the result of an employment injury; (2) on the unsupported theory that even though plaintiff sustained no head injury, defendants are liable because plaintiff's condition may have been caused or aggravated by artificial heat, and (3) in that there is insufficient evidence of permanent disability or its extent, due to any employment injury, or that any such disability is greater than it was prior to the alleged employment injury.

The greater part of appellants' printed brief is devoted to the first of these assigned errors. Their oral argument was largely devoted to the contention there is no proof of permanent disability. Aside from appellants' second assigned error, which we think is of less importance, the appeal really presents a single question—is the commissioner's award supported by substanial evidence? We have repeatedly considered similar questions.

I. In passing on the sufficiency of the evidence to support the award we must consider it in the light most favorable to plaintiff. Pohler v. T. W. Snow Constr. Co., 239 Iowa 1018, 1021, 33 N.W.2d 416, 418, and citations; Elliott v. Wilkinson,

248 Iowa 667, 669, 81 N.W.2d 925, 926, 927; Ziegler v. U. S. Gypsum Co., 252 Iowa 613, 616, 106 N.W.2d 591, 593.

We have many times called attention to the provision of section 86.29, Code, 1958, "In the absence of fraud the findings of fact made by the industrial commissioner * * * shall be conclusive." Also to the provision of 86.30 that a decision of the commissioner may be set aside "If there is not sufficient competent evidence * * * to warrant the * * * decision." Fraud is not claimed here.

 We have consistently held these provisions make the commissioner's findings of fact conclusive where the evidence is in dispute or reasonable minds may differ on the inferences fairly to be drawn from the facts. Such findings have the same standing as a jury verdict. Elliott v. Wilkinson, supra; Lamb v. Standard Oil Co., 250 Iowa 911, 916, 96 N.W.2d 730, 733; Martin v. Skelly Oil Co., 252 Iowa 128, 132, 106 N.W.2d 95, 98, and citations in these cases. It is the commissioner, not the court, who weighs the evidence. Daggett v. Nebraska-Eastern Express Co., 252 Iowa 341, 347, 107 N.W.2d 102, 106, and citations.

II. We will refer to facts shown by substantial evidence. Plaintiff commenced work for Firestone in its Des Moines plant in October 1954. In 1956 he fell to the concrete floor from a tire mold, hurt his back and head and was unconscious four or five minutes. He started having blackout spells lasting from two to 20 minutes. He says he had not had them before. Plaintiff's employment at Firestone was terminated July 31, 1956, for reasons of health. He had been hemorrhaging. He was a patient in a Des Moines hospital five days starting August 11.

October 14, 1957, plaintiff returned to his former work at Firestone. During the preceding 14½ months he had been examined at different times by a doctor employed by Firestone to see if he was able to resume his job. (Three doctors performed regular medical service for the company with its employees.) Just before October 14 the company doctor who examined plaintiff found he was able to be rehired, but should be rechecked in a month, and so advised the company. This same doctor again examined plaintiff November 18, 1957. He had worked for

Firestone the preceding month and four days. The doctor then thought plaintiff was remarkably improved, had probably recovered his health and would not have further trouble. Plaintiff continued in his job.

July 2, 1958, plaintiff slipped in water on the concrete floor and fell on his back and the back of his head. A large, heavy tire fell on him from a mold. A fellow employee removed the tire but apparently gave no other assistance. Another employee, Richard B. Jaennette, found plaintiff sitting in the water and asked him what the matter was. Plaintiff did not answer but looked stupid. His back and the back of his head were wet. Jaennette wiped them with a cloth. When plaintiff's head was touched he flinched and said, "'Watch the head.'" Also, "'I think I broke my back.'" He had a "goose egg" on the back of his head.

Jaennette helped plaintiff to the first-aid department where a registered nurse was nearly always on duty. On the way to first aid he complained of his head hurting him and was rubbing it. Plaintiff's supervisor also accompanied him to first aid, as he usually did with employees when it was a major sickness or injury—where the man might be incapacitated to some extent. The nurse gave plaintiff two aspirin tablets and he vomited afterwards. He returned to his work and, in about 45 minutes, for the first time in about a year, had a blackout spell. He testifies he did not report this spell for fear of losing his job. Plaintiff continued to have blackout spells. Following one such spell at Firestone on July 16 he was taken to his home and has never again worked for this employer.

Appellants say they have never disputed the fact plaintiff fell on July 2. They contend, however, the only evidence of any injury from the fall is to the back, not the head. We must disagree with this contention. There is clear evidence of an injury to the head. It is not contended it did not arise out of and in the course of employment.

Incidentally, plaintiff's application for arbitration filed with the industrial commissioner alleges the injury occurred "on or about June 20, 1958." That the evidence shows it was on July 2, rather than June 20, is unimportant. An applica-

374

tion for arbitration is not a formal pleading and is not to be judged by the technical rules of pleading. Nor is the same conformity of proof to allegation necessary as in ordinary actions. Cross v. Hermanson Bros., 235 Iowa 739, 742–744, 16 N.W.2d 616, 617, 618, and citations; Ford v. Goode, 240 Iowa 1219, 1225, 38 N.W.2d 158, 161; 100 C. J. S., Workmen's Compensation, section 505. See also McKay v. Ruffcorn, 247 Iowa 195, 197, 198, 73 N.W.2d 78, 79, and citations; section 86.18, Code, 1958; rule 106, Rules of Civil Procedure.

█ Plaintiff's blackout spells continued after his injury on July 2, 1958, until time of the hearing before the commissioner on review, April 19, 1960. The arbitration hearing before the deputy commissioner commenced July 13, 1959. The spells were more severe and frequent than those plaintiff had in 1956–57. Between July 2, 1958, and July 13, 1959, plaintiff had at least 200 or 300 spells. During one spell, two days before the arbitration hearing, plaintiff was "out" about 25 minutes. In the nine months between the two hearings plaintiff had three to five blackouts a week and probably more than 100 altogether. After such an attack he feels worn out "like a dishrag" and must lie down at least six or eight hours. He also rests to prevent the attacks from coming on.

There is substantial evidence plaintiff's condition was caused or aggravated by the fall on July 2, 1958. Plaintiff consulted Dr. John T. Bakody, a specialist in neurology, in January 1959. The doctor testifies trauma may produce or aggravate a convulsive disorder and that plaintiff's blackouts were part of such a disorder. In response to a hypothetical question he expresses the opinion there would be a causal relationship between the fall described and the succeeding blackouts. He also concluded plaintiff had a functional disability of the body as a whole as a result of these blackouts and would certainly have a disability in terms of employability.

██ The fact plaintiff had some blackouts in 1956 and 1957 or had been injured or diseased before he was re-employed in October 1957 is not a defense. If his condition was aggravated, accelerated, worsened or "lighted up" by the injury of July 2, 1958, so it resulted in the disability found to exist, plain-

tiff was entitled to recover therefor. Of course he was not entitled to compensation for the results of a pre-existing injury or disease. Rose v. John Deere Ottumwa Works, 247 Iowa 900, 908, 76 N.W.2d 756, 760, 761, and citations; Ziegler v. U. S. Gypsum Co., supra, 252 Iowa 613, 620, 106 N.W.2d 591, 595, 596, and citations.

See also 100 C. J. S., Workmen's Compensation, section 555(17)a, which states: "Causal connection is established when it is shown that an employee has received a compensable injury which materially aggravates or accelerates a pre-existing latent disease which becomes a direct and immediate cause of his disability or death."

Incidentally plaintiff did not apply for or receive workmen's compensation prior to his injury on July 2, 1958. He did receive for the first 26 weeks following July 31, 1956, benefits from group disability insurance on Firestone employees. Also for a like period following his 1958 injury. It is not shown who paid the premiums on this insurance.

 III. We think there is substantial evidence the disability resulting to plaintiff from his fall on July 2, 1958, is permanent. His disability should be evaluated from an industrial, not exclusively from a functional, standpoint. Martin v. Skelly Oil Co., supra, 252 Iowa 128, 133, 106 N.W.2d 95, 98, and citations; Iowa Law of Workmen's Compensation, by Professor Willard L. Boyd et al., page 77.

Doctor Bakody testifies at the review hearing, 21½ months after the injury, "Since these attacks have existed in the past, and may continue indefinitely into the future, in terms of reasonable medical certainty I would feel the functional disability here is of a permanent nature." As stated, this witness also says plaintiff would certainly have a disability in terms of employability.

In December 1958 Dr. James E. Kelsey examined plaintiff for the insurer under the group policy above referred to. He reported he did not think plaintiff was malingering, was wholly incapable of performing his usual work because of his blackout spells and would be for an indefinite period.

Firestone doctors and others there told plaintiff after his

1958 injury he would never be able to work around machinery again. Plaintiff says the only trade or skill he has is what he learned at Firestone.

IV. We feel, too, the evidence warrants the finding plaintiff's disability is 25% of total in extent. It is true no witness testifies directly to the percentage of disability. But the nature of the disability is such that a witness could hardly fix the extent with mathematical exactness. The number and duration of plaintiff's blackout spells and the rest periods they require as well as the constant danger of their recurrence are shown. Also that plaintiff is unable to drive a car because of his disability and the cost of hiring a driver. There is also evidence of the decline in his net earnings following his injury.

We are cited to no authority to the effect there must be direct evidence of the percentage of disability. The authority we find is to the contrary. 100 C. J. S., Workmen's Compensation, section 570, page 780, thus states the applicable rule:

"As a general rule, an award must be based on evidence which fairly proves the extent or percentage of disability; * * *. Ordinarily, however, a compensation claimant need not show the extent of disability with mathematical exactness, and direct evidence of the percentage of a permanent partial loss of normal efficiency is not essential to the determination of such percentage, and it is not essential that a percentage of disability be specified by any witness."

See also in support of our conclusion on this point Re Percival, 268 Mass. 50, 167 N.E. 352, 354, 63 A. L. R. 1237, 1240; Hall v. Spot Martin, Inc., Mo., 304 S.W.2d 844, 853, 854; Knuffke v. Bartholomew, 106 Neb. 763, 184 N.W. 889, 890; Blackstock Oil Co. v. Murtishaw, 184 Okla. 312, 87 P.2d 308, 310; Ripley v. Anderson Cotton Mills, 209 S. C. 401, 40 S.E.2d 508, 509; Traders and General Ins. Co. v. Snow, Tex. Civ. App., 114 S.W.2d 682, 688; Spalding v. Department of Labor and Industries, 29 Wash.2d 115, 186 P.2d 76, 86.

V. We cannot accept the contention there is insufficient evidence that plaintiff's disability is greater than it was prior to the alleged injury of July 2, 1958. What we have said about aggravation of a pre-existing condition is applicable here. It is

important too that a Firestone doctor examined plaintiff just before he was re-employed in October 1957, also a month and four days thereafter, found his health satisfactory and so reported to the employer. One of plaintiff's own doctors also examined him on October 9, 1957, and found nothing wrong with him, "he seemed very sound." Then there is evidence plaintiff had no blackout spells for about a year before his 1958 injury.

VI. We have said the second assigned error, referred to at the outset, is less important than the others. It is that the district court erred in affirming the commissioner's award on the unsupported theory that even though plaintiff sustained no head injury, defendants are liable because plaintiff's condition may have been caused or aggravated by artificial heat. There is evidence plaintiff worked in heat as high as 125 to 140 degrees.

The commissioner's decision refers to plaintiff's statement of his injury, testimony which corroborates it, says the record establishes—and the commissioner believes there was—a fall. Although it finds plaintiff's claimed injury was established, the decision also recites "whether there was a fall or not, * * * the employer would be liable * * *. Most of the medical witnesses seem to agree that among other conditions, excessive heat would aggravate the condition complained of by claimant * * *. If the employment * * * brought about his present condition or aggravated a pre-existing one and thus brought about his present disability, the commissioner believes the matter is compensable [citation]."

This recital in the commissioner's decision does not call for a reversal. Nor is it necessary to consider the soundness of the quoted language. It is in the nature of dictum. The commissioner's finding that plaintiff fell and suffered the injury claimed by him finds sufficient support in the evidence and it in turn supports the decision. If the decision is right, and we think it is, any error in the commissioner's reasoning of which complaint is made is not prejudicial. In re Estate of Lawrence, 251 Iowa 305, 314, 100 N.W.2d 645, 651, and citations.

Even a court decision which is proper on any ground shown by the record will not be disturbed on appeal merely because

the decision is based on an unsound or erroneous reason. As frequently said, many a learned court is occasionally right for a wrong reason. The commissioner's decision should not be subjected to a more severe test than is a court decision. Town of Mechanicsville v. State Appeal Board, 253 Iowa 517, 525, 526, 111 N.W.2d 317, 322, 323, and citations.

VII. We have not referred to a good deal of evidence in 600 pages of record nor to all the arguments in appellants' extensive brief. However, nothing has been overlooked. Much of the evidence offered by defendants bears mainly on plaintiff's credibility as a witness and the weight to be accorded his testimony. As indicated in Division I hereof, these are matters for the commissioner, not the courts. Essentially, we are asked to retry disputed facts or facts from which different inferences may be drawn and arrive at our own conclusion therefrom, different from the commissioner's. This, of course, we may not do.—Affirmed.

All JUSTICES concur except BLISS, J., not sitting.