Mrs. Eunice Barz, appellee, v. Lyle J. Oler, employer, and
Iowa Hardware Mutual Insurance Company,
insurance carrier, appellants.

No. 51535.

(Reported in 133 N.W.2d 704)

March 9, 1965.

Brown, Dresser, Kinsey & Jolas, of Mason City, for appellants.

Davis, Huebner, Johnson & Burt, of Des Moines, for appellee.

PETERSON, J.—This is a workmen's compensation case arising out of the death of plaintiff's husband, Albert J. Barz. Mr. Barz died April 6, 1960. At the time of his death he was an employee of Lyle J. Oler. The death arose in the course of Mr. Barz's employment and the only question is whether the death arose out of conditions pertaining to the employment. At the time of his death the employee was repairing a pump system on a farm. He became suddenly ill, and died in an ambulance en route to a hospital in Mason City. An autopsy was performed and it was found that he died of a ruptured aneurysm of a lower portion of the abdominal aorta with massive hemorrhage.

The one question raised by appellant is that plaintiff's husband did not die from the effects of any activities on his part in the matter of his employment, but that his death was the result of a rather lengthy condition of bad health, which finally, at the particular time in question, resulted in his death.

I. Mrs. Eunice Barz, wife of Albert J. Barz, brought this action against the employer of her husband and the insurance carrier as to his workmen's compensation coverage. Albert Barz, age 59, died on the sixth day of April, 1960, while working as a plumber for his employer. Mr. Donald Ellis stopped at the place of business of Lyle J. Oler who operated the Oler Plumbing & Heating Store at Dows, Iowa, and asked him to send someone out to repair the water system at the farm where he lived with his parents. Mr. Oler sent Mr. Barz out to make the repair. He had been working for him as a plumber for a period of about 15 years. Mr. Barz arrived at about four o'clock p.m. Donald helped him in connection with the repair work which was to be done. There was a short section of pipe in the well pit that was leaking. Mr. Barz drained the water out of the pressure tank.

He took a ladder from his truck and put that in the pit and climbed down the ladder to make the necessary repair. The entrance to the pit was a small opening of about two feet square. The inside of the pit at the bottom was about six feet square with a gravel floor. It was eight or nine feet deep. When Mr. Barz was draining the tank the water ran out on the gravel floor and he had to dip it out. He used a gallon pail for this purpose and Donald stood at the top and pulled up the pail and dumped the water on the ground. Mr. Barz also drained out the 30-gallon tank. He lifted 15 or 20 buckets of water, about two-thirds full, up to Donald. When the water was bailed out Mr. Barz unhooked the pipe. He took the union apart first, then took the pipe apart, then pulled the hydrant off and got to the leaky pipe. He took out the leaky pipe and he then came to the reducer in the tank and that was where the trouble of the leak appeared. When he was working getting the reducer out he was standing in a position where the motor was between him and the pipe. He was leaning over the motor when he worked. The reducer was rusted. He tried to move it with an 18-inch wrench. He pushed hard and Donald could hear him grunting from the top of the pit. He asked Donald to get a larger wrench, which he did, and Mr. Barz then applied that wrench and pushed with all his energy again until he pushed the tank out of position. He hit the wrench hard as he was working on it and the defective piece came out. When he got the piece out he came to the top to get a new piece of pipe. He again went into the pit with the new piece and worked at it about five minutes, screwing it in and hooking it together. He then started to tighten everything up and at that time he spoke to Donald and said: "I am sick; I got to get out of here." He came out and told Donald his stomach hurt. He sat on the steps of the porch of the house and Donald asked him if he wanted to go into the house and lie down for awhile, but he said no. Donald asked him if he would like to have him go down and put the pieces together and he said he did. Donald went into the pit and it took him about ten minutes to put the pieces together. Donald asked him if he wanted him to take him to a doctor. He said no, but he thought he wanted to go to town to his home. He said he did not think he could drive the car. Mr. Barz and Donald got

into the truck and Donald took him to town. Donald testified he was starting to turn yellow in color and was perspiring heavily. He seemed to have severe pains in his stomach and was all doubled up. He could hardly sit up straight. Donald took him to his home and then went to get the doctor. The doctor came and after a short examination said it would be necessary that he be taken to the hospital at Mason City. He called an ambulance. On the way to Mason City, he died in the ambulance.

The deputy commissioner decided against claimant. On review the acting commissioner decided in favor of claimant, and the trial court affirmed.

II. Section 86.25, 1962 Code, states as follows: "The decision of the industrial commissioner in any case on review before him shall be in writing, filed in his office, and shall set forth his findings of fact and conclusions of law."

Section 86.30, 1962 Code, is in part as follows: "Any order or decision of the industrial commissioner may be modified, reversed, or set aside on one or more of the following grounds and on no other: * * *

"3. If the facts found by the commissioner do not support the order or decree.

"4. If there is not sufficient competent evidence in the record to warrant the making of the order or decision."

Seven doctors testified either before the deputy commissioner or upon hearing on review by the commissioner. There is some conflict in the medical testimony of some of the doctors, but overwhelming testimony was given by at least five of the doctors to the effect that Mr. Barz died as a result of straining on the wrenches in the work he was doing, leaning over the motor, and lifting water out of the well in buckets. This is what ruptured the aneurysm of the lower abdominal aorta. According to the testimony of the doctors this occurred at the time in question because of the increase in blood pressure and intra-abdominal pressure.

We have repeatedly referred to the provisions of the sections above quoted. This is to the effect that the findings of fact of the industrial commissioner have the force of a jury verdict and may not be disturbed if supported by any substantial evi-

dence. Among the numerous decisions of this court we will only cite a few recent opinions. Wagner v. Otis Radio & Electric Co., 254 Iowa 990, 119 N.W.2d 751; Eagen v. K & A Truck Lines, 254 Iowa 914, 119 N.W.2d 805; Yeager v. Firestone Tire & Rubber Co., 253 Iowa 369, 112 N.W.2d 299; Almquist v. Shenandoah Nurseries, Inc.; 218 Iowa 724, 254 N.W. 35, 94 A. L. R. 573.

 In the case at bar the testimony is largely a matter of medical opinion. Two of the doctors saw Mr. Barz, one of them before he died and the other after he was brought to the hospital. Other doctors assisted in a postmortem examination and others testified on the basis of a hypothetical question. We have often held that medical opinions present a fact question for the determination of the commissioner. Hemker v. Drobney, 253 Iowa 421, 112 N.W.2d 672; Guyon v. Swift & Co., 229 Iowa 625, 295 N.W. 185; Schofield v. White, 250 Iowa 571, 95 N.W.2d 40.

 It is the predominant claim of defendant that Mr. Barz had been sick for some time, maybe for some months and maybe for some years. His death, therefore, according to the claim of defendant was the result of the sickness finally attacking him and appearing at the particular time at which he died. This question has been before this court heretofore and we have held that preexisting conditions are not necessarily a defense to an action for workmen's compensation. We have held that an injury is compensable even though there is an underlying disease, if death results from or was hastened by the injury, which includes exertion. Yeager v. Firestone etc. Co., Guyon v. Swift & Co. and Almquist v. Shenandoah Nurseries, all supra; Ziegler v. United States Gypsum Co., 252 Iowa 613, 106 N.W.2d 591.

In the case of Hemker v. Drobney, supra, on page 429 of 253 Iowa, the court said:

"It is true, Drs. C. L. Plott, Robert A. Hayne, J. M. Rhodes, and Clyde J. Smith, gave their opinions that the work decedent was doing could have raised his blood pressure and did aggravate the weakness in the ruptured blood vessel causing decedent's death. All but one agreed with [decedent's] doctors that the facts revealed in the pathological report clearly indicated a congenital aneurysm or weakness in the ruptured artery, but felt

the weakness gave way because of the haste, excitement and difficulties experienced in his work at that time.

"Sufficient testimony has been set out to establish a conflict in the experts' opinions submitted to the commissioner. It is not within our province to weigh it. In our determination whether or not there is substantial competent evidence to support the commissioner's finding, the conflict in expert opinion is to be considered. Bocian v. Armour & Co., supra, 244 Iowa 304, 308, 56 N.W.2d 900; Reynolds v. George & Hoyt, 230 Iowa 1267, 1271, 300 N.W. 530; Eveland v. Newell Constr. and Mach. Co., 236 Iowa 204, 17 N.W.2d 524."

We have heretofore considered facts which are very similar to the instant case. In Guyon v. Swift & Co., supra, we said on page 633 of 229 Iowa:

"There is evidence in the record that because of the diseased condition of the artery the small plaque would have ultimately broken off by the ordinary flow of blood and caused the occlusion. There is evidence to sustain the conclusion of the commissioner that the plaque was broken off through increased pressure and speed of the blood caused by the exertion of Guyon.

"This court has uniformly held that though an injury aggravates or accelerates a disease it is compensable if death results from or was hastened by the injury. West v. Phillips, 227 Iowa 612, 288 N.W. 625; Almquist v. Shenandoah Nurseries, 218 Iowa 724, 254 N.W. 35, 94 A. L. R. 573; Hanson v. Dickinson, 188 Iowa 728, 176 N.W. 823."

III. The facts were not exactly the same, but the subject matter of the acceleration of a workman's disease by reason of the work he was doing was given some consideration in the very recent case of Yeager v. Firestone Tire & Rubber Co., supra. We used the following language on pages 374, 375 of 253 Iowa:

"The fact plaintiff had some blackouts in 1956 and 1957 or had been injured or diseased before he was re-employed in October 1957 is not a defense. If his condition was aggravated, accelerated, worsened or 'lighted up' by the injury of July 2, 1958, so it resulted in the disability found to exist, plaintiff was entitled to recover therefor. Of course he was not entitled to compensation for the results of a pre-existing injury or disease. Rose

v. John Deere Ottumwa Works, 247 Iowa 900, 908, 76 N.W.2d 756, 760, 761, and citations; Ziegler v. U. S. Gypsum Co., supra, 252 Iowa 613, 620, 106 N.W.2d 591, 595, 596, and citations."

The facts heretofore outlined were stated in detail in the original opinion of Deputy Commissioner Dahl and upon such statement of fact the commissioner upon review found that Mr. Barz's death was caused directly from the work he had been doing on the farm of Mr. Ellis near Dows, Iowa.

Dr. Tom D. Throckmorton, a Board certified specialist in general surgery, testified at the review hearing as follows:

"In view of the hypothetical as given, and in view of no problem before this exertion, and in view of the situation found afterward, I would consider it probable under the facts given that the exertion accelerated or exacerbated the rupture of this aneurysm. The rupture of aneurysms may happen without any known precipitating factor, but commonly it happens after some form of increased intra-abdominal pressure. It is not uncommon for this incident to occur while a person is straining at stool, or while on a bedpan. The fact that this person is straining on a pipe wrench, raising pails of water, is leaning over a motor, all this does increase the pressure in his abdomen and squeeze on this mass. * * *

"The rupture of the aneurysm is the cause of death and the exertion may have been a precipitating factor. I feel that it is probable that under the facts related here the exertion had a direct relation to the situation."

Dr. Richard E. Paul, also a Board certified general surgeon, testified as follows:

"I feel that death was hastened by the activities which have been described to me. I think that this was within a period of a number of minutes or at least half an hour or so when he apparently reached maximal stress or effort. I think it's most likely that there was a cause and effect relationship in the stress that elevated the pressure and the blowout of the aneurysm."

Dr. Charles H. Gutenkauf, a Board certified internist, testified as follows:

"A. Well, my opinion is that this man's straining as hard as he could on these pipe wrenches, you know, first one and then the

other, and leaning over the motor was probably the thing that ruptured this thing, because this would greatly increase the blood pressure, and further would greatly increase intra-abdominal pressure. You strain; you grunt, and this puts a lot of pressure on the walls of this aneurysm which was pre-existent, true, and it was large enough that sometime in the future it had a good likelihood of rupturing, probably a 90 percent chance of rupturing within five years, but nevertheless he might have lasted longer than five years. You don't know, or anytime up to five years, but I think that this is well-known that a sudden strain or pressure will cause these things to rupture, and this is a classical history. * * *

"Q. And based upon these facts which we have asked you to assume, it is your opinion that it is probable that his activities hastened his death? A. That's true. There is no question in my mind about this. * * *

"Q. Would you feel that it had a direct causal relationship to the rupture of the hernia? A. Yes.

"I am convinced that the exertion was the precipitating factor which aggravated or exacerbated the aneurysm and hastened his death. I think it ruptured a few minutes before he developed his pain, and I think that we are forced to conclude that pulling on the pipe wrench and this other exertion was the immediate cause of it."

When Mr. Barz was brought to his home by Donald Ellis the doctor who was first brought in to treat him was Dr. Edgar S. Brintnall. He was certified by the American Board of Surgery and was practicing in the University Hospitals and at the Veterans Hospital in Iowa City. He happened to be in the town of Dows on the day when Mr. Barz was brought in. He testified as follows:

"I would feel that the rupture started during the heavy labor and the type of labor described is sufficient to markedly elevate the blood pressure.

"Q. In your opinion was such increased blood pressure a causal factor in the rupture of his aneurysm? A. I believe that it was a likely precipitating factor. * * *

"Q. Then is it your opinion that this heavy work and lifting

in this situation raised the blood pressure and was a causal factor in the rupture taking place when it did? A. Yes, it is my opinion that that occurred."

The evidence sustains without question the finding of fact by the commissioner that the personal injury which arose out of and in the course of his employment and which caused his death is sufficient to make the award to the widow, which was done. The only question really in the case would be whether there was sufficient evidence to support the finding.

As the trial court said in its finding: "* * * Furthermore, the evidence amply supports the finding of the commissioner on review that the immediate cause of death was an aggravation of an existing condition and as such was compensable."

The case is—Affirmed.

All JUSTICES concur.