**COMMERCIAL STANDARD INS. CO. v. SHANK.**

**No. 8902.**

Court of Civil Appeals of Texas. Austin.

April 24, 1940.

Rehearing Denied May 15, 1940.

274

Todd, Crowley & Thompson, of Fort Worth, for appellant.

Callaway & Callaway, of Brownwood, for appellee.

BAUGH, Justice.

This is a Workman's Compensation case. J. G. Gorman was the employer, Shank the employee, and appellant the insurer. Shank received injuries to his right arm on August 27th and September 4, 1937, in the course of his employment, for which he was, on December 23, 1937, awarded compensation for eight weeks total and ten weeks 20% partial incapacity, totaling $90. He did not appeal from this award, but declined to accept it, and on January 4, 1938, so advised the Industrial Accident Board.

Subsequently he induced the Board to reconsider his case, furnished additional evidence, the Board set aside its former award, and on June 6, 1938, made a new award on its finding of 8 weeks' incapacity and 30% partial permanent incapacity. The insurer seasonably filed this suit to set aside the latter award. Trial was to a jury on special issues. They found that appellee's injuries resulted in total incapacity for 60 days and thereafter in permanent partial incapacity to the extent of 50%. They also found, in answer to special issues, that Shank, the doctor who originally examined him and reported thereon, and the insurer, were all mistaken as to the nature and extent of Shank's injuries, in the reports made to the Board on which it made its first award on December 23, 1937. Judgment, based upon these findings, was rendered in favor of appellee for $353.33 past due installments, and $4.50 per week for the 133 weeks remaining of the compensation period. The insurer has appealed.

No complaint is made as to the jury findings nor the amount of the judgment. Three contentions are presented on this appeal: (1) That the court should have defined the term "partial incapacity" as used in special issues 5, 6 and 7; (2) that he should have defined the term "mistaken" as used in special issues 8, 9 and 10; and (3) that the award of December 23, 1937, was a final award, not seasonably appealed from, and that therefore the Board had no jurisdiction to reopen it under the facts of the instant case, and make the new award of June 6, 1938.

We first consider the third above stated contention. This contention involves the application of Sec. 12d, Art. 8306, R.C.S.1925, as amended in 1931, Vernon's Ann.Civ.St. art. 8306, § 12d. The amendment, however, does not affect the provisions of the 1925 statute so far as the matters here involved are concerned. This section of the Compensation Act, without quoting it in full here, authorizes the Industrial Accident Board to review and change its former award "at any time within the compensation period," upon a "showing [of] a change of condition, mistake or fraud * * *." It is clear to our minds that this language states three distinct grounds which will authorize such a review. The "change of condition" stated means a subsequent change of the physical condition of the employee from that which existed at the time the original award was made by the Board. Independ-

ence Indemnity Co. v. White, Tex.Com. App., 27 S.W.2d 529. While the employee alleged a change of condition as authorizing a review by the Board of its former award, this ground was not submitted to the jury as a fact issue, nor its submission requested. The only ground submitted as basis for the Board's review of its former award was that of "mistake." On this issue the jury found, upon sufficient evidence to sustain such finding, that appellee, the doctor who examined him, and the appellant, were all mistaken in the original presentation of his claim to the Board, as to the nature and extent of appellee's injuries.

█ Nor do we agree with appellant that, as used in the statute, the term "mistake" relates only to an element of fact in the issue of fraud. The language used in Estes v. Hartford Acc. & Ind. Co., Tex. Civ.App., 46 S.W.2d 413, 417, related to the issue of fraud, the only ground on which a compromise agreement, theretofore approved by the Board, was sought to be reopened and reviewed in that case. In any event, the holding in that case that the Board had authority to review and set aside, under proper showing, its former order approving a compromise settlement of a claim, has since been definitely overruled by the Supreme Court in Commercial Cas. Ins. Co. v. Hilton, 126 Tex. 497, 87 S.W.2d 1081, 1082.

If the term "mistake" used in the statute relates only to mistake as an element of fraud, it would, in effect, be little less than surplusage. Fraud necessarily involves some element of mistake. If the perpetrator knowingly misleads his victim by misrepresentation, such victim is necessarily mistaken as to the true facts; otherwise no deceit would result. Or, if fraud result from innocent misrepresentation as to facts by either party, mistake as to the true facts necessarily results. In either event, mistake of one or the other party occurs. No limitation of the meaning of that term merely to the issue of fraud can therefore be attributed to the legislature.

On the other hand, it is clear, we think, that this term in the statute was intended to authorize a review by the Board of a mistake of fact as to the actual injuries received, whether made by the employee, the insurer, or the Board itself, irrespective of, or independent of, any issue of fraud. The purpose of the Compensation Act was to provide adequate compensation for injured employees, within the limits fixed by the Act, commensurate with the incapacity caused by the actual injuries received. And it was the manifest purpose of Sec. 12d to authorize the Board, in administering the Act, and to effectuate its purpose, to correct mistakes made without fault of any party, and in the light of the true facts, whether fraud on the part of anyone is involved or not. Such a case is here presented.

█ We come now to the question of what is the "compensation period" within the meaning of the statute. The question has never been determined by the Supreme Court so far as we have been able to find. Appellant relies, in the main, on Browner v. Texas Ind. Ins. Co., Tex.Civ.App., 17 S.W.2d 850, writ refused, to sustain its contention that the "compensation period," within which the Board is authorized to reopen and review its original award, is the period during which compensation is allowed in its first award.

The exact question here presented was decided against appellant's contention in a very careful and well considered opinion by Judge Leslie in Employers' Liability Assurance Corp. v. Best, Tex.Civ.App., 101 S.W.2d 891, writ dismissed. At first glance this case would appear to be in conflict with the Browner case; but a careful analysis clearly shows, we think, that it is not. While the Court of Civil Appeals in the Browner case in its original opinion did hold that the "compensation period" was referable to, and determined by, the period originally fixed by the Board as the period during which the injured employee was to be compensated for his particular injury; on motion for rehearing the court grounded its decision on the fact that the employee had failed in that case to show any "change of condition" (that being the ground on which he sought a review of his case by the Board) occurring subsequent to the date on which the original award was made. While the Best case definitely decides the contention made against the appellant; we think the appellee herein brought himslf within a correct interpretation of the holding even in the Browner case. In the latter case the court states [17 S.W.2d 852]: "The term 'compensation period,' as used, was intended to refer to the period during which compensation shall be allowed by the board and fixed in its order for the particular injury. *Such period is determined absolutely by*

276

*the facts of the particular injury.*" (Italics ours.) "The facts of the particular injury" manifestly should mean the *true facts* of such injury, and not mistaken or incorrect facts upon which the Board made an erroneous original award. If the Board had been induced by fraud to fix only a temporary period of compensation, when the employee had in fact been permanently incapacitated, and such temporary period had expired before the fraud were discovered; we think there can be no doubt but that under Sec. 12d of Art. 8306 the Board could, regardless of when such period originally fixed expired, review the former award, set it aside, and grant the injured employee the compensation to which the true facts would entitle him. For like reason, where the mistaken facts presented to the Board warranted only temporary compensation; whereas, the true facts as to injury actually received, would warrant or require a much longer period of compensation under the law, even under the rule announced in the Browner case, the "compensation period" should, in any event, be referable to the period during which the true facts would entitle the injured employee to be compensated.

██ The manifest purpose of Sec. 12d of Art. 8306 was to enable the Board to correct and revise its orders within the limits therein stated, where wrong or inadequate, without resort to the method of appeal to the courts prescribed in Sec. 5 of Art. 8307 of the statute. The Board itself found upon review of its original award, upon ample competent evidence to sustain its finding, that it was factually mistaken in its original finding and award of December 23, 1937, that appellee's injury was not temporary but permanent; and the jury found likewise.

The injured employee declined to accept the award, so notified the Board even within the 18 weeks compensation allowed him, and then asked for a further hearing and reconsideration of his case. Due to his refusal to accept the compensation awarded him, none had been paid him prior to June 6, 1938, and no suit had been filed to set aside the original award. Consequently the Board still retained jurisdiction over his claim. Independence Indemnity Co. v. White, Tex.Com.App., 27 S.W.2d 529, 531; Miller's Indemnity Underwriters v. Hayes, Tex.Com.App., 240 S.W. 904, 907.

We conclude therefore that the Board was clearly authorized and had jurisdiction,

under the provisions of Sec. 12d of Art. 8306, to correct the "mistake" made in its original award; and that it acted, under the established facts of this case, "within the compensation period" designated in the statute in doing so.

██ In its second contention appellant asserts error of the trial court in failing, upon request duly made, to define the term "mistaken" as used in special issues 8, 9 and 10 submitted to the jury. Special issue No. 8 reads as follows: "Do you find and believe from a preponderance of the evidence that at the time of submitting his claim to the Industrial Accident Board, and prior to the hearing of December 23rd, 1937, that W. E. Shank was mistaken as to the nature of the injuries, if any, to his arm, that is as to whether same were of a temporary or of a permanent character?"

Special issues 9 and 10 sought the same findings relating to the doctor's examination of Shank prior to December 23, 1937; and whether the appellant was similarly mistaken.

If the term used has a definite legal meaning, it should have been defined by the court. Art. 2189, R.C.S. Appellant cites in support of its contention that the term "mistake" does have a definite legal meaning, cases holding that the term "mutual mistake" has such meaning. These cases, however, involved the question of mutual mistake as a ground for reformation of a written instrument so as to make it speak the true agreement of the parties. No such question is here presented. In the instant case the issue before the Board, and before the jury, was whether the parties involved were in error, or were mistaken factually, as to the extent of Shank's injury. And the issue as submitted further makes clear the fact inquired about. The term "mistaken" as so used, and as related to the subject matter to which it pertained, was clearly used in its commonly accepted meaning; and is so universally used and understood that any attempt to define it would but be abortive.

██ The other contention made is that the trial court erred in refusing, upon proper request, to define the term "Partial incapacity" as used in special issues 4, 5 and 6.

In special issue No. 3, the trial court submitted to the jury the question of whether appellee's injury resulted in his total incapacity. The term "total incapacity" was

properly defined. The jury found that he was totally incapacitated for a period of 60 days. No complaint is made either of the jury's finding or of the definition of "total incapacity." Following this, special issues 4, 5 and 6 inquired whether the period of total incapacity, if so found, was (a) followed by a period of partial incapacity; (b) if so, how long would it continue; and (c) what was the percentage thereof. The jury found partial permanent incapacity to the extent of 50%. The evidence was sufficient to sustain these findings and they are not questioned on that ground.

Sec. 10 of Art. 8306, R.C.S., prescribes the compensation for the employee "While the incapacity for work resulting from the injury is total * * *." Sec. 11 prescribes compensation "While the incapacity for work resulting from the injury is partial * * *." There can be no question but that the phrase "incapacity for work" was used in the same sense and has the same meaning in both of these sections; and that the court's definition of "incapacity for work" in his definition of "total incapacity" would apply with equal reason and force to the issue of "partial incapacity." United States Fidelity & Guaranty Co. v. Baker, Tex.Civ.App., 65 S.W.2d 344, 346. Undoubtedly the jury so understood it. The court, in the definition given, properly defined the term "total." Thus the jury were properly instructed as to what was meant by the term "incapacity" and what was meant by the term "total." Following the question as to total incapacity, they were then asked if such period of total incapacity was followed by a period of "partial" incapacity. Under these circumstances it is inconceivable that the jury could have concluded otherwise than that the same meaning of "incapacity for work" applied to both issues alike. The uncontroverted evidence showed that Shank's injury would be permanent. That the jury was not misled by failure of the trial court to define the term "partial" is shown by their finding that he was 50% incapacitated. Where "incapacitated" and "total" have been properly defined, and a fact finding on that issue made; and then the issue of partial incapacity submitted in which the term "incapacity", already defined, has the same meaning, it seems to us that any attempt to then define "partial," a word of definite meaning and universal comprehension, would add

little if anything to the enlightenment of the jury.

 But if it be conceded, under the holding in Texas Employers' Ins. Ass'n v. Brock, Tex.Com.App., 36 S.W.2d 704, 706, that this phrase should have been defined by the court in the submission of issues 4, 5 and 6, we think the record in this case affirmatively shows that no injury to appellant resulted from such failure; and that the error, if conceded to be error, was harmless.

The judgment of the trial court is therefore affirmed.

Affirmed.