13 N.J. Super. 286 (1951)
80 A.2d 367
NICHOLAS JANVARI, PETITIONER-APPELLANT,
v.
PETER SCHWEITZER CO., RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Union County Court.
Decided April 13, 1951.
*288 Mr. Louis Lebowitz, attorney for petitioner-appellant.
Mr. George E. Meredith, attorney for respondent-respondent (Mr. Isadore Kalisch, on the brief).
McGRATH, J.C.C.
On May 21, 1947, petitioner, a blacksmith, met with an accident, injuring his back. While putting the finishing touches on a truck it squeezed him against the platform. He returned to work July 2, 1947. He had a formal hearing and the deputy director found that surgery was not necessary and that there should be an award of temporary disability plus permanent disability of ten per cent of total. He found a preexisting weakness of petitioner's neural arch, and X-rays showed evidence of arthritis which the deputy *289 director said was not surprising in view of the man's age and his work. He also found his leg affected by a cardio-renal system disorder. The deputy director found a low back injury of an orthopedic character. Petitioner had stated that he never had trouble with his back before the accident. The deputy director said: "There has been some indirect allusion to surgery. The greater weight of the credibility testified in this case preponderates against that."
The award was paid and the man continued to work and was working for the respondent at the time of the original hearing on June 28, 1948. His complaints at the time of the hearing were as follows: back bothers him, legs swell up, left leg folds and swells more than the right; legs sore, pain across back, headaches, nausea, leg and stomach hurt, could not lift anything.
Dr. Leonard Harris testified for petitioner at the original hearing and said the man had a defect in the neural arch at the fifth lumbar vertebrae known as a pre-spondylolisthesis. He estimated 60 per cent of total permanent disability. The involvement of the neural arch, he admitted, existed before the accident but was agitated by the accident. He did not know whether the man had disability before the accident. His diagnosis was a pre-spondylolisthesis aggravated by acute back sprain. He thought there would be no change in his condition. He found no disability in the leg but there was a small neurotic element.
Dr. P.F. Cardinale testified for the petitioner at the original hearing that the man had 20 per cent of total based on a contusion and abrasion of the lower abdominal wall and lower spine. The doctor never felt that surgery was required. He advised a neurological examination. The prognosis was good but there might be some neurological condition. The X-rays showed a productive arthritis between the first and second lumbar vertebrae, but there was nothing that he ascribed in the way of disability to the arthritic condition.
Dr. Andrew C. Ruoff, at the original hearing said the man had a 2 1/2 to 3 per cent total, and 5 per cent would be extremely *290 liberal. He said petitioner suffered from a cardio-renal vascular disease not related to the incident, but had no neurosis.
Dr. William B. Ein, for respondent, at the original hearing thought five per cent of total from an orthopedic standpoint would be proper. There were mild arthritic changes of the lower dorsal spine, a spina bifida, a definite involvement of the neural arch at the first sacral segment, but no relationship between the accident and the spondylolisthesis.
The petitioner's physical appearance at the time of the original hearing was described by Dr. Cardinale as being a heavy set man weighing 250 pounds, and being 6 feet 2 1/2 inches tall, with a prominent stomach.
On October 11, 1949, a petition was filed alleging that since the original award the petitioner's orthopedic disability had increased, and seeking additional compensation under the act and incidental expenses. This petition was heard by the deputy director and was dismissed on the ground that there had been previously entered a finding that surgical intervention was not reasonably indicated and that petitioner was thereby estopped by res adjudicata or by failure to object to the deputy director's original finding, and that at least the petitioner should have given notice to the respondent so that the respondent might have investigated in advance the need for the operation, which was performed several months after the original hearing.
The transcript of the original hearing for disability was offered in evidence by the respondent at the hearing for increased disability, and was also referred to at the second hearing by the deputy director, and therefore, I have examined the original transcript of the first hearing, on the original claim for disability. I find nothing in the original hearing which would estop the petitioner as a matter of law nor is there any estoppel by failure to object to evidence. At the beginning of the first hearing, the attorney for the respondent stated that the sole question was the extent of permanent disability. Neither of the lawyers referred to an operation during *291 the trial nor did the doctors refer to it except that the deputy director asked Dr. Ein and Dr. Cardinale if they thought that surgery was indicated and they replied in the negative.
Of course, even where a matter is res adjudicata it is only res adjudicata as to the condition of the petitioner at the time of the original judgment, and a workman whose condition changes and becomes worse is not estopped from seeking further treatment. Ducasse v. Walworth Mfg. Co., 1 N.J. Super. 77 (App. Div. 1948). As a matter of fact, in the case of Lazzio v. Primo Silk Co., 114 N.J.L. 450 (Sup. Ct. 1935), there was no increased disability before the treatment. The rule is stated in Ducasse v. Walworth Mfg. Co. as follows: "Where injured employee used reasonable care in the selection of physicians and submitted to surgical operation which was unsuccessful and aggravated the original injury; held, employee is entitled to recover compensation for increased permanent disability resulting therefrom."
The deputy director thought that the petitioner in this case is indirectly attempting to appeal the prior decision that no surgical treatment was indicated, but this is not what the petitioner is doing. The petitioner does not claim that at the time of the original determination he needed surgery but he claims that afterwards he went back to work as a blacksmith and that his condition became worse, and that because it became worse it was necessary to seek the services of Dr. Weigel, an eminent surgeon, and that the operation was performed because of his worsened condition, and resulted in increased disability. Obviously Dr. Weigel could not treat the man in any condition except in the condition in which he found him at the time some months after the award. Dr. Weigel had no previous knowledge of the case since he had had no connection with it until some time after the original hearing and award. Had the petitioner thought at the original hearing that he needed an operation at that time he no doubt would have asked for it. We must remember that the petitioner's work is that of a blacksmith and he would be in a good position *292 to know whether his injured back had gotten worse after he had resumed work at his trade. It is not likely that he would have consented to a painful operation unless he felt that it was necessary at the time it was performed. It is interesting to note that nobody connected with the respondent was produced to give any evidence of his work and outward appearance at the time he says he quit because he couldn't go on. On the contrary he said he discussed the matter with Mr. George Mintz, the plant manager, but got no results, and Mr. Mintz has not been called to contradict this nor to show what he observed about the man if anything at the time when he stopped work. Neither was his helper called.
Of course, on the question of good faith all the circumstances must be considered, including the finding of the deputy director at the first hearing, that operative surgery was not indicated at that time, but we must look at these things from the standpoint of all the evidence. The petitioner is not a lawyer nor a surgeon nor an X-ray specialist and he did what any ordinary person would naturally do under the circumstances. He knew what the attitude of respondent's doctors was from what they had said at the first hearing. To require a workman to give notice that he intends to seek treatment would be introducing conditions and refinements into the Compensation Act which are entirely out of place as a general rule, and the facts do not justify such a requirement in this particular case. Besides, there is the element of loss of time involved in first giving notice of needed extra treatment. As a matter of fact, although the petitioner did not give any formal notice of a request for an operation he says that he asked Mr. George Mintz, plant manager, for an operation at the time he quit work after the award and was refused, and Mr. Mintz was not called to contradict this. As the court said in Lazzio v. Primo Silk Co., supra, we must take into consideration that the act deals with human beings and that there is a human impulse to seek relief even where the case has been regarded as hopeless. The petitioner here is not seeking the costs of the operation and medical or hospital bills *293 since there was no formal request for an operation, and petitioner's attorney at the second hearing expressly said that there was no claim being made for these expenses, so that the lack of request for an operation if it existed could only be relevant on the question of good faith.
I find that at the first hearing surgery was not reasonably indicated but that thereafter petitioner returned to work and his condition became worse and that because of his worsened condition he sought the services of Dr. Weigel, who performed an operation as part of his treatment for the man's worsened condition, and that the operation was necessary for his worsened condition in which Dr. Weigel found him at the time; that petitioner was fully justified in following the advice of Dr. Weigel and submitting to the operation, and that petitioner used reasonable care in the selection of a physician and surgeon. It is true that there were underlying and preexisting physical defects and disabilities but these could not be raised to defeat an award for compensation in this case, and of course, the petitioner need only prove his right to recovery by the ordinary rules of evidence which are set forth in Ducasse v. Walworth Manufacturing Co., and need not be repeated. I find that the Bureau had jurisdiction to hear the merits of petitioner's claim.
It is, therefore, ordered on this 13th day of April, 1951, that this cause be remanded to the Division of Workmen's Compensation in order that the merits of his claim for increased disability may be adjudicated, under the provisions of the Compensation Act.