William GOSEK, Appellant,

v.

GARMER AND STILES COMPANY, Employer, Fidelity and Casualty Company of New York, Insurance Carrier, Appellees.

No. 52839.

Supreme Court of Iowa.

May 7, 1968.

Leo Oxberger, Des Moines, for appellant.

William C. Hoffmann, Des Moines, for appellees.

RAWLINGS, Justice.

The deputy industrial commissioner denied plaintiff-applicant's claim for additional compensation on second review-reopening hearing. Claimant appealed to district court, and from affirmance of commissioner's adjudication he takes appeal.

William Gosek, claimant, was injured January 15, 1962, while employed by defendant, Garmer and Stiles Company.

October 14, 1963, pursuant to a memorandum agreement, plaintiff was paid $3209 by defendant compensation carrier.

Application for review-reopening was filed by claimant February 4, 1964, on which hearing was held. May 7, 1964, deputy commissioner's decision issued finding 15% permanent partial disability. No appeal from this adjudication was taken by either party.

August 19, 1964, claimant filed a second review-reopening application. A motion to dismiss was overruled and second hearing held.

February 10, 1965, deputy commissioner filed decision finding evidence insufficient to disclose change in claimant's condition subsequent to first review-reopening and denied relief.

■ I. Our review is relatively limited. Findings of fact by the commissioner are binding on us if the evidence is in dispute or reasonable minds could differ as to inferences drawn from the facts.

■ Also the commissioner's findings are broadly and liberally construed to uphold rather than defeat his decision.

The test is sufficiency of the evidence to support the determination.

With regard to the foregoing see Crees v. Sheldahl Telephone Co., 258 Iowa 292, 296–297, 139 N.W.2d 190, and Wagner v. Otis Radio & Electric Co., 254 Iowa 990, 993, 119 N.W.2d 751.

However, where the ultimate conclusion can be arrived at only by application of a rule of law, the result reached embodies a conclusion of law reviewable on appeal. Pribyl v. Standard Electric Co., 246 Iowa 333, 337, 67 N.W.2d 438.

■ II. On a review-reopening hearing claimant has the burden of showing by a preponderance of the evidence his right to compensation in addition to that accorded by a prior agreement or adjudication. See

Wagner v. Otis Radio & Electric Co., supra, loc. cit., 254 Iowa 993, 994, and Oldham v. Scofield & Welch, 222 Iowa 764, 766–768, 266 N.W. 480, 269 N.W. 925.

III. The basic question presented is whether a review-reopening is limited to increased incapacity alone, subsequent to a prior settlement or award, to the exclusion of mistake, lack of knowledge or misconception on the part of claimant relative to conditions existing at time of preceding disposition or adjudication.

In this connection section 86.34, Code, 1966, provides: "Any award for payments or agreement for settlement made under this chapter where the amount has not been commuted, may be reviewed by the industrial commissioner or a deputy commissioner at the request of the employer or of the employee at any time within three years from the date of the last payment of compensation made under such award or agreement, *and if on such review the commissioner finds the condition of the employee warrants such action, he may* end, diminish, or *increase the compensation so awarded or agreed upon.* Any party aggrieved by any decision or order of the industrial commissioner or a deputy commissioner on a review of award or settlement as provided in this section, may appeal to the district court of the county in which the injury occurred and in the same manner as is provided in section 86.26." (Emphasis supplied.)

It is commonly understood, if a claimant sustained compensable injuries of which he was fully aware at time of prior settlement or award, but for some unexplainable reason failed to assert it, he cannot, for the first time on subsequent review proceedings, claim additional benefits. Stated otherwise, once there has been an agreement or adjudication the commissioner, absent appeal and remand of the case, has no authority on a later review to change the compensation granted on the same or substantially same facts as those previously considered. See 101 C.J.S. Workmen's Compensation § 853, page 200.

But according to the apparent majority view, if a claimant does not know of other employment connected injuries or disability at time of any prior agreement or adjudication, he is not ordinarily barred from later asserting it as a basis for additional benefits. See 2 Larson, Workmen's Compensation Law, section 81.32, page 334, and 100 C.J.S. Workmen's Compensation § 661, pages 1002, 1003–1004.

Dealing with just such a situation the court said in Crabb v. Department of Labor and Industries, 186 Wash. 505, 58 P.2d 1025, 1027: " 'A liberal interpretation (of cited law) impels us to hold that the change in condition, when proven, permits a continuing jurisdiction to end, diminish, or increase compensation previously awarded, even though the change in condition manifests itself in injuries not expressly enumerated in the original award, but yet attributable to the original accident.' * * *

"Spence v. State Compensation Commissioner, 110 W.Va. 162, 157 S.E. 164, involves injuries which were reported as 'contusion of head, left shoulder, elbow and back.' Compensation was allowed for these injuries and the claim was closed. Seven months later a claim was made for other injuries resulting from the same accident. Based upon this state of facts, the court said:

" 'In a case such as at bar where there was an injury existing from the date of an accident, not discovered by the physicians or considered by the commissioner in fixing the original award, there is presented a matter going to the basis of claimant's right within the meaning of (law cited), just as much as though it were a further disability arising from the injury subsequent to the date of the original determination of the matter by the commissioner.' "

To the same effect is this statement in Messer v. Drees, Ky., 382 S.W.2d 209, 212–213: " * * * bearing in mind that compensation laws are fundamentally for the benefit of the injured workman, a just claim must not fall victim to rules of order unless it is clearly necessary in order to prevent chaos. Time often tells more about medical cases than the greatest of experts are able to judge in advance. In Clear Fork Coal Company v. Gaylor, Ky., 286 S.W.2d 519, 522 (1956), this court recognized, for example, that even the permanence of a disability theretofore thought to be temporary 'is of itself in the nature of a change.' When subsequent events indicate that an award was substantially induced by a misconception as to the cause, nature or extent of disability at the time of the hearing, justice requires further inquiry. Whether it be called a 'mistake' or a 'change in conditions' is a matter of mere semantic taste. The important question is whether the man got the relief to which the law entitled him, based upon the truth as we are now able to ascertain it."

IV. Pursuing this subject one more step, there is also respectable authority to the effect that when there has been a compensable accident, and claimant's injury related disability is increased or prolonged by a trauma connected neurosis or hysterical paralysis, all disability, including effects of any such nervous disorder, is compensable. Arizona Copper Co. v. Hammer, (Arizona Employers Liability Cases), 250 U.S. 400, 431, 39 S.Ct. 553, 560, 63 L.Ed. 1058; Moccia v. Eclipse Pioneer Div. of Bendix Aviation, 57 N.J.Super. 470, 155 A.2d 129, 133; Edmonds v. Kalfaian and Son, Inc., 9 A.D.2d 551, 189 N.Y.S.2d 456; Ramos v. Wolf Die Cutting Company, 7 A.D.2d 686, 179 N.Y.S.2d 270; Griffiths v. Shaffrey, 283 App.Div. 839, 129 N.Y.S.2d 74; Kalikoff v. John Lucas & Co., 271 App.Div. 942, 67 N.Y.S.2d 153; Bare v. State Compensation Director, 148 W.Va. 760, 137 S.E.2d 435, 439–440; 1A Larson, Workmen's Compensation Law, sections 42.20–42.24, pages 615–621; and 16 Buffalo L. Rev. 727, 732.

V. In support of their position defendants cite, inter alia, Stice v. Consolidated Ind. Coal Co., 228 Iowa 1031, 291 N.W. 452. We do not find it incompatible with the views expressed above.

The sole issued presented in that case was whether claimant had established a *change of condition* since an earlier adjudication which would entitle him to additional compensation.

Referring to a foreign state legislative enactment, comparable to section 86.34, quoted supra, we said, loc. cit., 228 Iowa 1035–1036, 291 N.W. 455: "In construing this statute, the Utah court has repeatedly held that the commission may not resume jurisdiction of a case regularly determined without some change *or new development in the injury complained of not known to the parties when the former award was made.*" (Emphasis supplied)

And at page 1038, 228 Iowa, at page 456, 291 N.W., is this statement: "Section 1457 (section 86.34, supra), contains no provision for a re-examination of matters adjudicated by an award which is subject to review under it. It merely provides that 'if on such review the commissioner finds the condition of the employee warrants such action, he may end, diminish, or increase the compensation so awarded or agreed upon.' It seems to us that this language is subject to but one interpretation, namely, that the decision on review depends upon the condition of the employee, which is found to exist subsequent to the date of the award being reviewed. *We can find no basis for interpreting this language as meaning that the commissioner is to re-determine the condition of the employee which was adjudicated by the former award.*" (Emphasis supplied.)

Then in Rose v. John Deere Ottumwa Works, 247 Iowa 900, 905, 76 N.W.2d 756, this court, though not called upon to evaluate Stice, supra, acknowledged possible error in the limitations attributed to it.

A reappraisal of the Stice case, supra, indicates its attendant fault is probably due more to reputation than character; more to external interpretation than to internal weakness. Stated otherwise, it has generally been construed as limiting a compensation review-reopening to worsening of a given condition, but that interpretation is not correct.

Admittedly the interpretation heretofore accorded Stice is one of long standing, but it is erroneous and under existing circumstances should be by us corrected.

In Stuart v. Pilgrim, 247 Iowa 709, 74 N.W.2d 212, this court changed its previously applied rule regarding liability of a nondriver owner of a motor vehicle. In so doing we said, loc. cit., 247 Iowa 713–714, 74 N.W.2d 215:

"The problem before us now is whether more harm will be done by overruling our previous cases in order to install what we think is clearly the correct principle, or by adhering to an unsound decision in the interest of the rule of stare decisis. It is of the greatest importance that the law should be settled. Fairness to the trial courts, to the legal profession and above all to citizens generally demands that interpretations once made should be overturned only for the most cogent reasons. The law should be progressive; it should advance with changing conditions. But this does not mean that its forward progress should be over the dead bodies of slain and discarded precedents. Legal authority must be respected; not because it is venerable with age, but because it is important that courts, and lawyers and their clients may know what the law is and order their affairs accordingly.

"We have concluded here, however, that more mischief will be done by adhering to the precedent established in the Secured Finance Company case than by overruling it. It proceeds upon a wrong principle, built upon a false premise, and arrives at an erroneous conclusion. It is of course incumbent upon us to make clear our reasons for so determining." In the instant case our reasons have already been stated.

Surely more mischief, harm and actual wrong will be done by adhering to erroneous precedents than by now adopting a just interpretation of the subject law. In

support hereof see also State v. Machovec, 236 Iowa 377, 380–383, 17 N.W.2d 843, and 20 Am.Jur.2d, Courts, sections 183–188, pages 519–524.

■ We now hold, cause for allowance of additional compensation exists on proper showing that facts relative to an employment connected injury existed but were unknown and could not have been discovered by the exercise of reasonable diligence, sometimes referred to as a substantive omission due to mistake, at time of any prior settlement or award.

It is to us evident the conclusion above set forth is consistent with the aims and purposes of our workmen's compensation law, entirely compatible with Code section 86.34, supra, and in no material respect repugnant to Stice v. Consolidated Ind. Coal Co., supra.

In addition to authorities previously cited, the following lend support to the foregoing conclusion. Thomas v. Sheehan, Iowa, 149 N.W.2d 842, 843; Barton v. Nevada Poultry Co., 253 Iowa 285, 289–290, 110 N.W.2d 660; Bousfield v. Sisters of Mercy, 249 Iowa 64, 69–70, 86 N.W.2d 109; Rose v. John Deere Ottumwa Works, 247 Iowa 900, 905–906, 76 N.W.2d 756; Wold v. Decca Distributing Company, 269 Minn. 319, 130 N.W.2d 585, 588–589; Jacobson v. Uptown Transfer & Storage Company, 268 Minn. 336, 129 N.W.2d 41, 44–46; Guptill v. Conlon Const. Co., 239 Minn. 185, 58 N.W.2d 264, 267; Yeomans v. Jersey City, 27 N.J. 496, 143 A.2d 174, 180–183; Janvari v. Peter Schweitzer Co., 13 N.J.Super. 286, 80 A.2d 367, 369; Ginter v. Westinghouse Electric & Mfg. Corp., 11 N.J.Super. 338, 78 A.2d 403, 405–406; Commercial Standard Ins. Co. v. Shank, Tex.Civ.App., 140 S.W.2d 273, 275; Bare v. State Compensation Director, 148 W. Va. 760, 137 S.E.2d 435, 440; 2 Larson, Workmen's Compensation Law, section 81.53, page 337; 100 C.J.S. Workmen's Compensation, § 649, page 961; and 58 Am.Jur., Workmen's Compensation, section 541, page 914. See also Annos. 71 A.L.R.

2d 82, 90–100; Annos. 165 A.L.R. 19, 45–51; and 71 Iowa L.Rev. 181.

For cases readily distinguishable from that with which we are here dealing see, Ford v. Barcus, Iowa, 155 N.W.2d 507; Meadow v. Winchester Repeating Arms Co., 134 Conn. 269, 57 A.2d 138, 141–142; Wells v. Fox Ridge Mining Co., Ky., 243 S.W.2d 676, 677–678; Powell v. Sonntag, 159 Pa.Super. 354, 48 A.2d 62, 63–64; and Wallace v. Leitzen, 243 Minn. 481, 68 N.W. 2d 372, 375.

VI. Some reference to the factual situation involved in the case at hand is now essential.

Testimony presented at time of the *first review-reopening* is limited. It discloses claimant quit school at the end of the eighth grade; worked in a coal mine; was in service during World War II; and did construction work until time of injury, except for a period of one and a half years when he worked as a cook. Since an operation on his back May 2, 1962, prior to original settlement agreement October 15, 1963, he didn't think right; people would say something to him and he wouldn't know what they were talking about, he was thinking about something else, his nerves affected his thinking; he had not been employed since date of his injury; he suffered back aches; his legs got weak while walking too far; and he felt like staggering. *Claimant did not know if psychiatric assistance was needed, and if so whether anything could be done about it. He was willing to see a psychiatrist in order to determine whether he had brain trouble from the disc operation.* Prior to the injury these difficulties had not been noticed and in the five year period prior to injury he had seen a doctor only for sinus trouble, having lost no time from work because of illness or injury. *He had not seen a psychiatrist, did not talk to any of his doctors about the possibility of seeing one, and didn't have the money to pay for such consultation or treatment.*

Dr. F. Eberle Thornton, an orthopedic surgeon, testified to the effect claimant was a rather tense individual. That he, Dr. Thornton, was not a neuropsychiatrist, therefore not qualified as a specialist to diagnose the mental condition of a patient. It was his belief claimant had neither tried to work nor actually forced himself to see what he could do. *He thought there might be some nervous cause which prevented claimant from going ahead and doing things which was sometimes a natural reaction, and if he were the treating doctor claimant would have been sent to a neuropsychiatrist.*

With regard to the foregoing claimant's evidence reveals no real knowledge or appreciation on his part of any existing emotional disturbance but rather a lack of knowledge or misconception—a mistake. In addition Dr. Thornton's testimony discloses no actual knowledge on his part as to any then existing psychiatric problem. He, as examining physician for the compensation carrier, simply stated if he were the treating doctor claimant would have been referred to a neuropsychiatrist. This provides no basis upon which to conclude claimant or anyone else, at time of first review-reopening, actually knew of or appreciated any then existing psychiatric difficulties which *might* be confronting him.

Testimony presented on *second review-reopening* discloses a somewhat different situation.

Dr. Jean Glissman, a specialist in psychiatric medicine, stated she had seen claimant three times in 1964, and conducted a psychiatric examination. Claimant was then depressed; talked much about pain; was angry and resentful; thought people and insurance companies were against him; had fear of cancer; and was concerned about prior marital problems. After reciting the results of her examination and tests given, this doctor expressed the opinion *claimant was not malingering; had been able to work until injured; was presently hostile and suspicious, disclosing a measurable degree of deterioration in adjustment; and that further degeneration could be averted only by assistance in the nature of psychiatric and medical care. She considered claimant incapacitated by reason of combined physical and emotional problems. It was her belief he was a psychopathic deviate, had probably been hostile all his life, but prior to employment connected injury the condition was not such as to require psychiatric care. The given diagnosis was, depressed psychosis with paranoid trends.*

Another witness, Joe Facto, a psychologist, said he saw claimant twice in 1964, and after describing variant tests with attendant results stated claimant scored within normal in four of nine ranges in MMPI.

Claimant's testimony at this hearing discloses he still had pain in his legs and back as a result of which he was unable to work, and that prior to March 28, 1962, he had requested defendant compensation insurance carrier authorize payment for additional medical examination concerning his employment connected injuries, but was advised any further medical treatment would be at his own expense.

Dr. Howard V. Turner, a qualified psychiatrist, called by defendants, stated he saw claimant October 21, 1964; did not then believe the man was able to return to prior employment, *his emotional reactions to the injury had made him make up his mind he was unable to work; the condition found was more or less permanent* with some variation depending upon circumstances; *there was objective evidence of nerve root involvement at S–1; and without psychiatric involvement physical impairment loss to the body as a whole would be 12%.* He also said that because of claimant's character structure and emotional attitudes there was a greater degree of incapacity than in another person.

VII. It is now apparent the mere mention of mental and emotional problems confronting claimant on first review-reopening was not of such nature as to permit its

consideration by the commissioner in then determining the extent of any disability connected psychosis.

Under the circumstances disclosed this understandably stemmed from lack of knowledge with resultant inability on the part of all concerned to appreciate the full extent or significance of claimant's then existing emotional problems. Apparently he did all humanly possible to disclose an awareness of his situation, and inability on his part to alone do more about it.

■ On the other hand, testimony presented during hearing on the second review-reopening is sufficient to reveal a probable unknown injury connected neurosis at time of the first hearing; a new fact neither recognized, appreciated nor considered by the commissioner in adjudicating claimant's first review petition for additional compensation.

VIII. Referring against to evidence introduced during second review hearing, the record discloses claimant may have suffered some degree of emotional disturbance prior to any employment related physical injury. It also reveals this same injury may have triggered a trauma connected neurosis not previously experienced or recognized. In other words, possible aggravation of a pre-existing condition.

■ In that regard this court has consistently held, where an employee is afflicted with some known disease or infirmity which is aggravated, accelerated, worsened or "lighted up" by an employment connected injury so as to result in a disability found to exist, the claimant is entitled to compensation accordingly. Barz v. Oler, 257 Iowa 508, 512–516, 133 N.W.2d 704; Yount v. United Fire & Casualty Co., 256 Iowa 813, 817, 129 N.W.2d 75; and Rose v. John Deere Ottumwa Works, 247 Iowa 900, 908, 76 N.W.2d 756.

IX. We are persuaded the commissioner, and in turn the trial court, erred as a matter of law in holding to the effect that where an employee seeks additional compensation benefits he is restricted exclusively to showing change of condition subsequent to a prior settlement or adjudication.

However, in fairness to both commissioner and trial court, this error is entirely understandable in view of the interpretation heretofore commonly but erroneously accorded Stice v. Consolidated Ind. Coal Co., 228 Iowa 1031, 291 N.W. 452.

By virtue of all circumstances peculiar to the case at bar it should be remanded for redetermination.

Judgment entered by trial court is reversed, challenged adjudication by deputy commissioner vacated, and this case remanded to the industrial commissioner for reconsideration and adjudication on second review-reopening petition in light of this opinion.

Reversed and remanded to commissioner for reconsideration, as directed.

GARFIELD, C. J., and MASON and BECKER, JJ., concur.

STUART, J., concurs in the result.

LeGRAND, LARSON, SNELL and MOORE, JJ., dissent.

LeGRAND, Justice (dissenting).

I dissent. Although I agree with the impressive array of authority cited for the proposition that a workmen's compensation award may be increased upon satisfactory showing that a condition from which plaintiff now suffers was unknown and undiscoverable at the time of a prior hearing, I do not find the record justifies any such conclusion here.

My specific disagreement is with that portion of the majority opinion which finds the plaintiff, at the time of the second review-reopening hearing, established a condition which was unknown and which

could not have been discovered by the exercise of reasonable diligence at the time of the first review-reopening hearing. I find no substantial evidence in the record to support that statement.

The first review-reopening hearing was held March 23, 1964. A decision was handed down in May, 1964. On August 19, 1964, another petition for review-reopening was filed and hearing thereon was held on September 25, 1964. The majority opinion finds that between the first and second review-reopening hearings plaintiff for the first time discovered he was suffering from an injury-connected neurosis. Yet the record shows he knew he had a psychiatric problem at the time of the first hearing and, in fact, considered seeing a doctor about it but decided not to do so because "the insurance company would not pay for it." Disregarding the fact that plaintiff, or at least plaintiff's counsel, must have known the Industrial Commissioner could compel payment of proper medical expenses, this statement shows plaintiff was aware on March 23, 1964, of the very problem for which he now seeks additional compensation on the theory it is new and was not discoverable at an earlier date.

I cannot believe the Workmen's Compensation Act intended a claimant who was unsuccessful after full hearing should be allowed to overthrow that determination by then bringing forward additional evidence which could have been, and should have been, produced at that hearing. The majority relies heavily on Messer v. Drees, Ky., 382 S.W.2d 209. Even that case, however, does not contemplate relief under the circumstances shown here. There at page 212 the court said, "We do not suggest that after a case has been lost or appears about to be lost counsel should be allowed to halt the proceedings and bring up reinforcements." That is precisely what claimant is being permitted to accomplish here.

He asserts the evidence upon which he now relies was not available to him at the time of the first hearing. This is not borne out by the record. The evidence was always available and plaintiff was always aware of his condition, although not in specific detail. All plaintiff did between the first and second hearings was obtain a new witness, the eighth doctor, incidentally, who treated or consulted with him since his injury.

The record shows plaintiff knew of the problem about which he now complains; that he considered seeing a doctor about that very condition; that he neglected to do so until after he was unsuccessful in the hearing of March 23, 1964; and that he now seeks to avoid the impact of that decision by claiming a new disability about which he did not and could not have any knowledge prior thereto. This is the basis for the majority's holding here. I find it to be entirely unsupported by the record.

Nor can I agree with the majority's gentle emasculation of Stice v. Consolidated Independent Coal Company, 228 Iowa 1031, 291 N.W. 452. Stice was decided in 1940. It was marked by a sharp dissent which carefully pointed out wherein the opinion was thought to be erroneous. Yet the legislature in more than 27 years has not seen fit to amend what is now section 86.34, although it has frequently amended the Workmen's Compensation Act in one way or another. Under these circumstances it is no longer debatable whether we properly interpreted the legislature's intention in enacting that section originally. In view of that prolonged legislative inaction, we must assume the legislature has acquiesced in our interpretation of the section in question. It is a familiar rule of law that failure to amend a statute after it has been interpreted by the courts raises a presumption of legislative satisfaction with that interpretation. 82 C.J.S. Statutes, § 316 p. 549; General Mortgage Corporation of Iowa v. Campbell, 258 Iowa 143, 152, 138 N.W.2d 416, 421.

In allowing plaintiff an additional award here, I believe the majority flies directly

in the face of the Stice decision, particularly that language at page 1038 of the Iowa Reports at page 456 of 291 N.W. which says, "We can find no basis for interpreting this language [section 86.34] as meaning that the commissioner is to re-determine the condition of the employee which was adjudicated by the former award."

I would affirm.

LARSON, SNELL and MOORE, JJ., join in this dissent.