# IN THE COURT OF APPEALS OF IOWA

No. 14-1295
Filed June 10, 2015

**MIRSAD GRAHOVIC,**
        Petitioner-Appellant,

**vs.**

**SECOND INJURY FUND OF IOWA,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Arthur E. Gamble,

Judge.


        Mirsad Grahovic appeals from the district court's judicial review ruling

affirming the workers' compensation commissioner's rejection of Grahovic's

review-reopening petition against the Second Injury Fund.  **AFFIRMED.**


        Steven C. Jayne, Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Julie A. Burger and Deborah M.

Stein, Assistant Attorneys General, for appellee.


        Heard by Danilson, C.J., and Vaitheswaran and Doyle, JJ.

**DANILSON, C.J.**

Mirsad Grahovic appeals from the district court's judicial review ruling, affirming the workers' compensation commissioner's rejection of Grahovic's review-reopening petition against the Second Injury Fund. A review-reopening petition against the Second Injury Fund is not available unless there has been a prior award or settlement with the Fund. Here, Grahovic had no prior award or settlement with the Fund to reopen relative to the 2005 injury to his left leg. We therefore affirm.

**I. Background Facts and Proceedings.**

*Left Leg.* Mersad Grahovic has had left knee pain at least since 1982. In April 1997, he fell while working. In May 1997, Grahovic was referred to Dr. Senesiol Misol, an orthopedic specialist, who diagnosed degenerative arthritis of the patellofemoral joint of the left knee.

*Right Leg.* In 2001, while working for Bauer Built, Inc., Grahovic was struck by a large, heavy hook, injuring his right knee. Grahovic sought workers' compensation claims against Bauer Built and the Second Injury Fund. Grahovic, the employer, and the employer's insurer entered into a "full-commutation for a permanent disability of 10 percent (22 weeks) of the leg."

*2003 Settlement with Second Injury Fund re Right Knee.* Grahovic and the Fund entered into a settlement with respect to his right knee, injury date March 4, 2001, which provided in part there was a "bona fide dispute" under Iowa Code section 85.35(8),[1] the Fund would pay a lump sum to Grahovic, and

---

[1] Iowa Code section 85.35 (2003) provided, in part:

Grahovic "releases and discharges [the Fund] from all liability under the Iowa Workers' Compensation Law" for the injury, and the sum "represents the only and final award the claimant shall ever receive with respect to the injury." The instant action does not involve an attempt to reopen this award.

*Left knee.* In April 2004, Grahovic began working for Norwalk Ready Mix (Norwalk) operating a mixer truck, requiring Grahovic to repeatedly clutch with his left leg. In September 2004, Grahovic was seen by Dr. Timothy Kenney for left knee pain Grahovic attributed to operating the truck at work. Dr. Kenney noted Grahovic's intermittent problems with his left knee over many years. Then-current x-rays showed the development of degenerative arthritis, primarily medial and patellofemoral, slight joint narrowing, and irregularity and early development of osteophytes. Dr. Kenney administered a steroid injection in the left knee and restricted Grahovic from repetitive climbing, squatting, and kneeling, and ordered the diminished use of the clutch to relieve symptoms. Grahovic was instructed on a strengthening program.

On September 7, 2005, Grahovic was seen by Dr. Colin Kavanagh complaining of left knee pain. Dr. Kavanagh wrote: "Chronic bilateral knee disease, patellofemoral disease by history, right side greater than left. Recent

---

The settlement shall not be approved unless evidence of a bona fide dispute exists concerning any of the following: . . . 8. A substantial portion of the claimed disability is related to physical or mental conditions other than those caused by the injury.

Approval by the workers' compensation commissioner shall be binding on the parties and shall not be construed as an original proceeding. Notwithstanding any provisions of this chapter and chapters 85A, 85B, 86 and 87, an approved settlement shall constitute a final bar to any further rights arising under this chapter and chapters 85A, 85B, 86 and 87. Such payment shall not be construed as the payment of weekly compensation.

exacerbation of left knee pain associated with heavy clutching. No new injury believed to have occurred relative to popping sensation experienced yesterday, September 6, 2005." Grahovic was instructed to return to work with same restrictions as before, with a new restriction of no clutching.

*2007 Workers' Compensation Petition against the Fund.* On April 6, 2007, Grahovic filed a workers' compensation petition against Norwalk and the Second Injury Fund. Grahovic alleged he sustained a first loss to his right knee in 2001 while working at Bauer Built, Inc., and a compensable second loss to his left knee while working at Norwalk on September 6, 2005.

Norwalk settled with Grahovic for an amount equaling five-percent permanent partial impairment to his left leg.

On May 22, 2008, a hearing was held on Grahovic's claim against the Fund. On July 3, 2008, an arbitration decision was filed, ruling Grahovic was not entitled to benefits from the Fund because he failed to prove he sustained an injury to his left leg on September 6, 2005. The deputy ruled that even if he had proved he had sustained a work-related injury, Grahovic had failed to prove the asserted injury caused permanent disability.

On intra-agency appeal, the commissioner adopted the arbitration ruling except to the extent the deputy found Grahovic had not sustained an aggravation of his preexisting disability to the left knee (degenerative arthritis of the patellofemoral joint of the left knee, assessed by Dr. Senesiol Misol in May 1997). The commissioner ruled:

> The greater weight of the evidence does not support the presiding deputy's finding that the evidence fails to establish a temporary aggravation injury. All doctors appear to agree the work activity at

least aggravated the prior leg condition. It is therefore concluded that claimant aggravated his prior left leg condition on September 6, 2005. However, this conclusion does not significantly change this decision as it is further concluded that this aggravation injury did not result in any additional permanent disability.

The commissioner concluded Grahovic was not entitled to Fund benefits.

On June 2, 2010, the district court denied Grahovic's petition for judicial review, and on July 15, entered a ruling on Grahovic's motion to expand, explaining it had "clearly stated its conclusion that 'there is substantial evidence to support the commissioner's determination that Grahovic failed to meet his burden to establish that he sustained a new permanent qualifying injury on September 6, 2005, and thus failed to prove a threshold requirement to receive benefits from the Fund.'"

*2011 Review-Reopening Petition.* On January 24, 2011, Grahovic filed a review-reopening petition against Norwalk and the Fund, asserting he had sustained a permanent injury to his left leg on September 6, 2005, and a former injury to his right knee on 2001. Following an arbitration hearing, a deputy commissioner concluded Grahovic "has mislabeled his 'review-reopening' petition as it relates to the Fund." The deputy noted Grahovic "has asserted his left knee condition is worse entitling him to review additional benefits from Norwalk and benefits through the Second Injury Fund of Iowa." The deputy found:

> In this case, there is conflicting opinion as to whether the claimant suffered a permanent impairment due to his work at Norwalk and whether he has shown a change in condition, which would entitle him to an increase of his prior award. . . .
> The claimant has a significant impairment in his left knee. The claimant has not met his burden of proof to show his condition has worsened after the agreement for settlement due to a work

injury for Norwalk liability, or that he has suffered a qualifying second injury after July 3, 2008 due to a work injury at Norwalk for Fund liability purposes.

I find the opinions of Dr. Ash more convincing than Dr. Kirkland and Dr. Jones. Dr. Ash has had extensive contact with the claimant for his left knee from 2005 through 2011. Dr. Jones [and] Dr. Kirkland do not have the number of contacts with the claimant as Dr. Ash. While Dr. Kirkland and Dr. Jones have opined claimant has an increase in interval space in his left knee, 3mm down to 2mm, these doctors have not identified that the condition was worse after the agreement for settlement, February 25, 2008, (Norwalk) or after the arbitration decision, July 3, 2008, (Fund) for liability purposes.

I do not find claimant's evidence that he engaged in substantially more work with a clutch with Norwalk convincing. I found the testimony of Rod Schlender to be more convincing than the claimant. Mr. Bohlander testified that patching and curb work was not a substantial portion of the work performed by Norwalk. Claimant's testimony was not convincing that the clutch he used for Norwalk was substantially different from CTI or Liberty Ready Mix Companies. Mr. Bohlander testified that the clutch in older trucks tended to be looser rather than tight or hard. Dr. Kirkland's opinion as to causation relies, in part, on the assumption that claimant's work with Norwalk involved frequent use of a much stiffer/harder clutch that his other cement truck driving jobs. I did not find claimant's proof of this convincing.

The claimant's testimony of his functional limitation during the hearing did not support a claim that his condition is worse. I find he continues to have the same limitations as were assigned in 2006. He has not proven his economic condition has worsened because of his injury at Norwalk. The claimant's economic condition has become worse due to his back injury with Liberty Ready Mix, not Norwalk.

Grahovic appealed to the commissioner.

On intra-agency appeal, the commissioner ruled:

[T]o prevail against the Fund requires that claimant must show the original injury, albeit temporary, has now developed into a permanent injury. As claimant cannot re-litigate the facts presented in the previous arbitration decision and has not claimed any new, second work injury such a burden may be difficult in this case when there is an underlying, non-work related, progressive degenerative knee condition. Claimant, in attempting to meet his burden, asserts that the original treating doctor's expectation of recovery has not happened. The problem is that there is no showing that the treating

doctors anticipated a recovery when they issued their original opinions. In fact, the doctors who were deemed to be the most convincing found permanent impairment and imposed permanent work restrictions. They simply opined that the impairment and restrictions were due to the underlying condition, not the aggravation injury or claimant's work for defendant-employer. Furthermore, the deputy found in this case, based on the more convincing views of Drs. Ash and Kirkland, that claimant's functional impairment or loss of use has not changed despite the views of Drs. Jones and Kirkland concerning the medial meniscus interval space deterioration. Even claimant admits that his permanent restrictions imposed in 2006 had not changed. (Transcript, page 93)

However, even if claimant's left knee is now worse than at the time of the 2008 arbitration proceeding, it is concluded that he has not shown that the worsening is due to the 2005 work injury and this is fatal to both of his claims in this proceeding.

Grahovic unsuccessfully sought judicial review in the district court and now appeals.[2]

## II. Scope and Standard of Review.

An appeal of a workers' compensation decision is reviewed under standards described in chapter 17A [(2013)]. Iowa Code § 86.26. "The agency decision itself is reviewed under the standards set forth in section 17A.19(10)." *Mosher v. Dep't of Inspections & Appeals*, 671 N.W.2d 501, 508 (Iowa 2003). In this case, the agency's decision was based on an interpretation of Iowa Code section 85.64. The interpretation of the workers' compensation statute has not been clearly vested by a provision of law in the discretion of the commissioner. *Finch v. Schneider Specialized Carriers, Inc.*, 700 N.W.2d 328, 330 (Iowa 2005). Accordingly, we will reverse the agency's decision if it is based on "an erroneous interpretation" of the law. Iowa Code § 17A.19(10)(c).

*Second Injury Fund of Iowa v. Kratzer*, 778 N.W.2d 42, 45 (Iowa 2010).

---

[2] Grahovic appeals only that portion of the agency ruling pertaining to the Fund; he filed a dismissal of his claim against Norwalk.

**III. Discussion.**

Grahovic argues he was entitled to "reopen" his claim against the Fund because his first qualifying injury was to the right leg sustained in 2001 and his second qualifying injury was to the left leg sustained on September 6, 2005, which has developed into a causally-related permanent disability since the prior ruling.

Two statutory provisions are at play here. Iowa Code section 85.64 provides:[3]

> If an employee who has previously lost, or lost the use of, one hand, one arm, one foot, one leg, or one eye, becomes permanently disabled by a compensable injury which has resulted in the loss of or loss of use of another such member or organ, the employer shall be liable only for the degree of disability which would have resulted from the latter injury if there had been no preexisting disability. In addition to such compensation, and after the expiration of the full period provided by law for the payments thereof by the employer, the employee shall be paid out of the "Second Injury Fund" created by this division the remainder of such compensation as would be payable for the degree of permanent disability involved after first deducting from such remainder the compensable value of the previously lost member or organ.
> Any benefits received by any such employee, or to which the employee may be entitled, by reason of such increased disability from any state or federal fund or agency, to which said employee has not directly contributed, shall be regarded as a credit to any award made against said second injury fund as aforesaid.

To establish a claim for benefits under this provision, Grahovic must prove (1) he sustained a permanent disability to a hand, arm, foot, leg, or eye (a first qualifying injury); (2) he subsequently sustained a permanent disability to another such member through a work-related injury (a second qualifying injury); and

---

[3] The provision was recently amended in form but not substance. *See* 2014 Iowa Acts ch. 1026 § 18 (effective July 1, 2014) (numbering paragraphs and changing "division" in paragraph 1 to "subparagraph").

(3) the permanent disability resulting from the first and second injuries exceeds the compensable value of "the previously lost member." *See Gregory v. Second Injury Fund*, 777 N.W.2d 395, 398-99 (Iowa 2010). Grahovic's 2007 petition against the Fund was denied because he failed to prove the second element, i.e., that he sustained a second qualifying injury because he did not prove that after 2001 he suffered a subsequent work-related permanent disability.

Grahovic does not contest he failed to prove these necessary elements in the earlier proceeding against the Fund. Rather, he urges that because

> his left knee condition did not improve to the extent anticipated . . . , that while the evidence at the first arbitration hearing supported the conclusion that permanent disability causally related to the injury was not present, time has elapsed so as to allow detection of the seriousness of the injury.

Thus, he contends he is not attempting to re-litigate the original action. Instead, he argues he is asserting a proper review-reopening pursuant to section 86.14(2), and the district court and the agency erred in concluding otherwise.

We conclude the commissioner addressed Grahovic's concern that the deputy misapplied the principles to his review-reopening claim and clearly applied the correct principles. The commissioner's final ruling is subject to judicial review not the deputy's arbitration decision. *See Myers v F.C.A. Servs., Inc.*, 592 N.W.2d 354, 358 (Iowa 1999).

Iowa Code section 86.14(2) provides: "In a proceeding to *reopen an award for payments* or agreement for settlement as provided by section 86.13, inquiry shall be into whether or not the condition of the employee warrants an end to, diminishment of, or increase of compensation so awarded or agreed upon." (Emphasis added.) Grahovic cannot successfully invoke section 86.14(2) here

because there was no prior "award for payments" or settlement against the Fund to reopen.[4]

Grahovic contends that his position is supported by *Meyers v. Holiday Inn*, 272 N.W.2d 24 (Iowa Ct. App. 1978).[5] *Meyers* is not on point. *Meyers* addressed the question "whether the industrial commissioner, in a proceeding for review reopening, has authority to change the extent of permanent partial disability under which compensation is paid because passage of time and subsequent events reveal that such disability exceeds that determined in the original arbitration decision." 272 N.W.2d at 25. Thus, in Meyers's agency proceedings, a *prior ruling of permanent partial disability had been made*, and the court of appeals found the commissioner could review that ruling when a "later evaluation results from the failure of a diagnosed condition to improve to the extent anticipated." *Id.* at 25-26.

More recently, our supreme court has stated:

> A compensable review-reopening claim filed by an employee requires proof by a preponderance of the evidence that the claimant's current condition is proximately caused by the original injury. While worsening of the claimant's physical condition is one way to satisfy the review-reopening requirement, it is not the only way for a claimant to demonstrate his or her current condition *warrants an increase of compensation* under section 86.14(2).

---

[4] The prior settlement was with the employer, Norwalk.

[5] *Meyers* dealt with a predecessor statutory provision:
> The controlling statute is section 86.34, The Code, which provides in pertinent part:
>> Any award for payments . . . made under this chapter where the amount has not been commuted, may be reviewed by the industrial commissioner . . . and if on such review the commissioner finds the condition of the employee warrants such action, he may end, diminish, or increase the compensation so awarded.
>
> 272 N.W.2d at 25.

*Kohlhaas v. Hog Slat, Inc.*, 777 N.W.2d. 387, 392 (Iowa 2009) (emphasis added).

The premise implicit in the emphasized language is that there must have been a

prior award of compensation that might be increased. "On a review-reopening

hearing claimant has the burden of showing by a preponderance of the evidence

his right to compensation *in addition to that accorded* by a prior agreement or

adjudication." *Gosek v. Garmer & Stiles Co.*, 158 N.W.2d 731, 732 (Iowa 1968)

(emphasis added). Here, there was no prior award of compensation to Grahovic

by the Fund because the agency had previously ruled Grahovic failed to prove he

had sustained a second qualifying permanent injury.

> The following *Kohlhaas* language is pertinent:

>> Although we do not require the claimant to demonstrate his current condition was not contemplated at the time of the original settlement, *we emphasize the principles of res judicata still apply*— that the agency, in a review-reopening petition, should not reevaluate an employee's level of physical impairment or earning capacity if all of the facts and circumstances were known or knowable at the time of the original action . . . . Therefore, "once there has been an agreement or adjudication the commissioner, absent appeal and remand of the case, has no authority on a later review to change the compensation granted on the same or substantially same facts as those previously considered." *Gosek*, 158 N.W.2d at 732. For example, "a mere difference of opinion of experts or competent observers as to the percentage of disability arising from the original injury would not be sufficient to justify a different determination by another commissioner on a petition for review-reopening." *Bousfield v. Sisters of Mercy*, 86 N.W.2d 109, 113 (Iowa 1957). *Likewise, section 86.14(2) does not provide an opportunity to relitigate causation issues that were determined in the initial award or settlement agreement.*

777 N.W.2d at 393 (emphasis added).

Grahovic did reach a settlement with Norwalk in respect to his left knee

but not the Fund, and his earlier arbitration claim against the Fund was

unsuccessful. Grahovic's relief against the Fund at this juncture could only lie in

arbitration, and then only if he was able to show the work injury he had suffered while employed with Norwalk worsened, the worsening was causally related to the employment, the worsening of the condition was not contemplated by the parties at the time of the ruling, and it resulted into a permanent disability. However, the agency gave Grahovic the benefit of the doubt and also viewed the claim in the context of a review-reopening case. The agency concluded he had failed to show his worsening condition of his left knee was proximately caused by the 2005 injury suffered at Norwalk. *See Kohlhaas*, 777 N.W.2d at 392 ("A compensable review-reopening claim filed by an employee requires proof by a preponderance of the evidence that the claimant's current condition is proximately caused by the original injury."). The district court then fully examined the record and reached the same conclusion that the medical evidence did not support a change of condition resulting in a permanent disability. Upon our review, we cannot add further to the district court's well-reasoned conclusions. We therefore affirm.

**AFFIRMED.**