John **LEFFLER**, Petitioner-Appellee,

v.

**WILSON AND COMPANY**, Employer, Self-Insured, Respondent-Appellant,

and

**Iowa Industrial Commissioner,** Respondent.

No. 2–65736.

Court of Appeals of Iowa.

Jan. 26, 1982.

Gene R. LaSuer and John A. Templer, Jr., of Davis, Hockenberg, Wine, Brown & Koehn, Des Moines, for respondent-appellant.

Jerry Wieslander of Frank G. Wieslander, P. C., Altoona, for petitioner-appellee.

Heard by OXBERGER, C. J., and DONIELSON, SNELL, CARTER, and JOHNSON, JJ.

PER CURIAM.

The employer appeals from the district court's ruling, which held that the deputy industrial commissioner imposed a higher burden of proof than is legally required on the claimant, that the deputy improperly minimized the weight to be given expert testimony, and which remanded the case to the industrial commissioner for a redetermination of disability using the correct principles of law. We affirm the district court's ruling.

The claimant was injured on September 9, 1975, during a fight with his foreman. He sustained physical injuries to his finger and back. He also alleges, and presented expert psychiatric testimony to prove, that he was permanently and totally disabled due to psychiatric problems resulting from the fight.

A deputy industrial commissioner found that the claimant was injured in the course of his employment and granted him healing period benefits to December 16, 1975. The only psychiatrist to testify stated that the claimant is permanently and totally disabled due to psychological problems which were triggered by the fight on September 9, 1975. The deputy recognized this, then stated that a number of factors detracted from the finding that the claimant was totally disabled by the fight. The deputy held the claimant's psychiatric condition was only partially brought about by the September 9, 1975, injury. The deputy then found claimant's industrial disability to be 25 percent of the whole man.

The claimant appealed to the industrial commissioner, who affirmed the deputy's decision. The claimant then appealed to the district court, which ruled that: (1) the deputy improperly minimized the weight to be given the psychiatrist's testimony; and (2) the deputy imposed a higher burden of proof on the claimant than is required by law. The court remanded the case to the industrial commissioner. The employer appealed that ruling.

We find that Langford v. Kellar Excavating & Grading Inc., 191 N.W.2d 667 (Iowa 1971) is controlling. Here, as in Langford, taking into account the doctor's testimony and giving it full effect, the conclusion is inescapable as a matter of law that the claimant's disability is directly traceable to the injury of September 9, 1975, without which it would not now exist. This is all the claimant need prove. Langford.

Defendant and the Commissioner claim that a number of factors detracted from the finding that the claimant was totally disabled. One factor was that there was a preexisting anxiety. Another factor was the existence of a prior work-related injury. We cannot agree that these are of great significance. When he was informed of them, Dr. Shafer took them into consideration, conceding they may have contributed to the end result, but expressing the unshaken opinion that claimant's present disability relates to the 1975 injury. At no time did Dr. Shafer retreat from his statement that the 1975 injury was the precipitating cause of the claimant's condition.

We know of no reason to vary from the rule that the employer takes the employee as he finds him in physical injury incidents and apply a different rule in psychiatric injuries. See Gosek v. Garmer & Stiles Co., 158 N.W.2d 731 (Iowa 1968) 1B Larson, Workmen's Compensation Law § 42.22.

We therefore affirm the trial court and remand the case to the industrial commissioner for a determination of the extent of claimant's disability under the record made in the hearing on claimant's petition.

AFFIRMED AND REMANDED TO THE INDUSTRIAL COMMISSIONER.

All judges concur except CARTER, J., who dissents.

CARTER, Judge (dissenting).

I must dissent. The present case involves judicial review of the industrial commissioner's determination of the extent of permanent industrial disability sustained by claimant as a result of a work-related injury. As such, it falls within the well-established rule that the commissioner's findings on such matters must be upheld if supported by substantial evidence. This is the holding of cases such as *Yeager v. Firestone Tire & Rubber Co.*, 253 Iowa 369, 372–74, 112 N.W.2d 299, 301–02 (1961), and has not been appreciably changed by the provisions of section 17A.19(8), The Code, relating to judicial review of agency action. Both the district court and the majority decision of this court fail to heed this rule in the present case and assert invalid reasons for failing to do so.

The decision which is the subject of judicial review in the present action is that of the deputy industrial commissioner in a review reopening which was adopted by the commissioner as the final agency action. In this decision, the deputy, who had heard the evidence, found that the claimant was injured in the course of his employment on September 9, 1975, and that the healing period for this injury was concluded December 16, 1975. The deputy further found that the claimant had some permanent disability involving a psychiatric condition, but that only a portion of that psychiatric condition was the result of the work-related injury. The extent of the permanent disability which related to the injury was found by the deputy to be 25% of the body as a whole, and claimant's compensation was fixed in accordance with that amount of disability.

The district court, on a petition for judicial review of this agency action, reviewed the testimony of Dr. Roger Shafer, a psychiatrist who testified on behalf of the claimant at the administrative hearing and concluded that the deputy commissioner in considering this testimony "must have imposed a higher burden of proof upon the claimant than is legally required and thus improperly minimized the weight to be accorded Dr. Shafer's testimony." As a result of this conclusion, the district court ordered that the case should be remanded to the commissioner for reconsideration of Dr. Shafer's testimony in light of proper rules of law. I submit that in so doing, the district court misapplied *Langford v. Keller Excavating and Grading, Inc.*, 191 N.W.2d 667, 670 (Iowa 1971), so as to reach an incorrect result. The majority of this court similarly misapplies the *Langford* decision.

The basis for the holding in *Langford* simply is not present in this case. There the issue on appeal was whether the commissioner had applied an improper standard of proximate cause in ruling that the claimant's disability was not legally connected to a work-related injury. Unlike the present case, the commissioner in *Langford* accepted in a review reopening the accuracy of the claimant's medical testimony indicating that claimant's original work-related injury contributed to his subsequent disability. Compensation was denied by the commissioner, however, because the commissioner found other causes not connected with claimant's employment had also contributed to the disability. In reversing this determination, the supreme court stated that the commissioner was improperly requiring the claimant to show his job-related accident was the *sole* proximate cause of his disability rather than *a* proximate cause.

In the present case the issue is not whether there is any causal relationship between claimant's September 9, 1975, injury and his present disability, but rather the extent of his present disability and what part of that disability is traceable to the prior injury. In making these determinations in the present case, the commissioner clearly did not accept all of the conclusions and opinions of claimant's medical expert. The deputy's decision, adopted as the final agency action, clearly rejects certain of these conclusions and states why this was done. On

the present record, this was well within the factfinding province of the agency.

In workers compensation cases, the industrial commissioner is free to reject expert testimony so long as valid reasons are specified as to why this is done. *Catalfo v. Firestone Tire & Rubber Co.*, 213 N.W.2d 506, 510 (Iowa 1973). Indeed, the court in *Langford* expressly states that even when the employer or insurance carrier offers no evidence on an issue "this alone does not render the facts undisputed. The finder of fact may still reject the [claimant's] testimony as being without credibility or he may accept one of the several inferences flowing from it. *In that event, his conclusion is binding on us."* *Langford*, 191 N.W.2d at 669 (emphasis added). Because the deputy did this in the present case, and gave valid reasons for doing so, the majority is not warranted in stating "[h]ere, as in *Langford*, taking into account the doctor's testimony and giving it full effect, the conclusion is inescapable as a matter of law that the claimant's disability is directly traceable to the injury of September 9, 1975, . . . ." In the present case the deputy did not give the claimant's medical testimony full effect nor was this required to be done.

Moreover, the foregoing statement by the majority suggests a misunderstanding of the issue involved. It is not whether claimant's disability is traceable to the prior injury—the commissioner found that it was. Rather, the issue is the extent of the claimant's disability and what part of that disability was caused by the prior injury. In this regard, the majority decision injects a false issue in the case by suggesting that the commissioner in the present case failed to heed the rule that "the employer takes the employee as he finds him." This rule cannot properly be applied without also applying the rule that if a worker already has some disability which is increased by a compensable injury, the worker is entitled to compensation only to the extent of the increased disability. *DeShaw v. Energy Manufacturing Co.*, 192 N.W.2d 777, 780 (Iowa 1971); *Yeager v. Firestone Tire & Rubber Co.*, 253 Iowa at 375, 112 N.W.2d at 302. It is with the latter rule that the commissioner was forced to struggle in the present case.

The record, including the testimony of claimant's medical witness, Dr. Shafer, discloses that the particular psychiatric condition which is alleged to be the basis of claimant's disability is not dissimilar from symptoms experienced by claimant prior to the injury of September 9, 1975. Dr. Shafer opined that claimant's problems were traceable to what he described as post-traumatic neurosis. He indicated, however, several factors in claimant's history which indicated a predisposition to neurosis prior to the September 9, 1975, injury. In addition, Dr. Shafer indicated in his testimony that anxiety neurosis also produces the same symptoms as those exhibited by claimant. He identified anxiety neurosis as a condition brought about by a number of past events which culminate in a mental condition having essentially the same symptoms as post-tramatic neurosis. In the deputy's decision it is noted that in identifying the claimant's problem as post-traumatic neurosis, Dr. Shafer was relying on rather limited reports of claimant's past behavioral problems and was not aware of several significant medical events which may have indicated serious psychiatric problems in advance of the September 1975 incident. In this regard, Dr. Shafer was not aware that claimant had suffered a quasi-heart attack in 1973. During Dr. Shafer's deposition, which is a part of the record in this proceeding, the following question was asked:

If I would hypothesize or tell you that there was a similar incident (heart attack) in early 1973 in which he was, in fact, admitted to the hospital, complaining of chest pain and, in fact, in intensive care and the cardiac unit for almost a week, I believe, and again discharged without any diagnosis of a physical disability or physical ailment, would that information have had any effect on your evaluation and diagnosis and prognosis of Mr. Leffler? I realize that I am springing this on you.

A. It certainly would make me be more suspicious of anxiety neurosis than I would have been before, yes.

Q. Anxiety neurosis?

A. Yes.

Q. Not necessarily post-traumatic neurosis?

A. No.

In addition, Dr. Shafer was apparently unaware that also in 1973 the claimant missed some work for what he told the plant personnel office was a "nervous breakdown."

As the foregoing indicates, the record reflects that the claimant missed substantial work prior to 1975 because of psychological difficulties and related problems. These conditions detracted from the opinion of Dr. Shafer with respect to the extent to which claimant's present psychiatric condition or the alleged disability flowing therefrom was the product of the September 9, 1975, injury. Based on these factors, the deputy, for the reasons which were clearly stated in the agency decision, was not compelled to accept claimant's medical evidence as a verity.

In addition to the foregoing, there are other valid reasons supporting the agency action. Quite apart from the issue of apportionment of claimant's disability between preexisting conditions and work-related injuries, there is a substantial factual issue as to the extent of his permanent disability. Dr. Shafer, who was the only witness favorable to claimant on this issue, testified that he believed the psychiatric condition of the claimant was permanent. However, also in the record, is the deposition testimony of Dr. Shafer indicating that claimant's problem was complicated by the existence of what was described as "secondary gain" motivation. During this deposition, the following testimony occurred:

Q. In that same letter you also stated that psychological component to this condition relates to the patient not being cared for, etc., when he was a child and obtaining physical injury and a patient of this kind will often lead to their obtaining maximum secondary gain from their condition. What does that mean?

A. Secondary gain—there are two kinds of defenses. There are unconscious ones where we choose to do things and there are those that are called unconscious that are out of our awareness, that our mind chooses for us, for instance. Secondary gain is an unconscious defense mechanism in which an individual by virtue of the attention he gets because of a symptom he has continues the symptom in an effort to get more attention. That's the more classic kind of secondary gain definition.

Q. Do you believe Mr. Leffler's active symptoms exhibited this, then?

A. Yes I do.

Q. And they still do?

A. Yes I do.

Exhibit 5–3 of a stipulation filed with the commissioner contains a letter from Dr. Shafer to claimant's attorney, dated February 14, 1978. In that letter, Dr. Shafer states:

The patient primarily comes in to see me when there is some flareup with the company that he worked with, some concern about, in November, for example, of his "being fired" by the company and his concern about what the compensation would be at that time that the post-traumatic neurosis will continue with this individual for an extended period of time until there is some settlement reached.

On cross-examination regarding this letter, Dr. Shafer testified regarding his diagnosis:

Q. Well, then, Dr. Shafer, why did you in your letter of February 14, 1978, which we were just looking at, say that he has, "concern about what the compensation would be at that time that the post-traumatic neurosis will continue with this individual for an extended period of time until there is some settlement reached . . ." Didn't you state in this letter that I just read that his condition would continue until some settlement is reached? I take it that was a statement that said that the problem that brings us here today is resolved?

A. My experience with patients with similar conditions is that the resolution of settlement has some compatibility of the emotional aspect of the condition. Some people do have a decrease in symptoms after settlement.

Q. And that's what you're referring to in this letter?

A. Yes.

Based on Dr. Shafer's testimony as a whole, the inference could fairly be drawn that although claimant had some permanent psychiatric condition flowing from the September 9, 1975, injury, this was not the entire reason for his present inability to work. After considering this evidence, the deputy industrial commissioner stated as follows:

No matter what the psychiatric or medical label, certain mental sets cannot be permitted to result in compensation. Motive of secondary gain, i.e., the injury is used as an avenue for an underlying condition to express itself, and the fact that settlement of the litigation may show a change in claimant's condition, is certainly an area of mental set where compensation is not due. Claimant's somewhat "prima donna" attitude is illustrated by notations in the rehabilitation records, that certain tasks are beneath his dignity and pride. Claimant's attitude has a very real effect on claimant's employability. Such an attitude resulting in nonemployment would hardly seem one for which an employer should be responsible. Separating the compensable mental attitude from the noncompensable is not simple. This claimant presents many characteristics of both. However, the undersigned feels that the lines of distinction drawn in this decision are drawn at valid points. Considering all these factors, and claimant's work history noted supra, as well as claimant's lack of any permanent physical impairment, claimant's industrial disability, as a result of this incident, and which is solely of a mental origin, is found to be 25 percent of the whole man.

Clearly, it cannot be said that claimant established as a matter of law that his disability was greater than that fixed by the commissioner and therefore the district court and the majority of this court err in disturbing that award.[1]

There are two particularly unfortunate aspects which follow the decision of this court in the present case: One has general application, and the other has reference only to the present case. The problem of general application is that, given the decision in the present case, the commissioner can only infer that in the future expert medical testimony must be accepted as a verity even if it rests on what the commissioner, as factfinder, believes to be unsound factual premises. This is true because there is much in the present record to suggest that Dr. Shafer's testimony is not compelling, yet the commissioner is reversed for not fully accepting it. The time has not come when an administrative agency must accept as a verity the testimony of an expert witness simply because the witness has a medical degree. Such practice is not in accordance with the law as expressed by prior decisions of the supreme court, and it greatly depreciates the factfinding role of the commissioner contrary to the authority granted to the commissioner by the legislature.

The other unfortunate aspect of the present case is that it remands the matter to the commissioner for "a determination of the extent of claimant's disability." But, the commissioner has already determined this under the evidence as he saw it. What, then, is he now to do? Must the commissioner guess as to how much additional disability will satisfy further judicial review on this record? By remanding the case the majority apparently recognizes that it cannot fix the extent of claimant's disability because that is a matter for the commissioner. I submit that because this is so, the commissioner's original determination of that issue should not have been disturbed.

---

1. The nature of the present disability is such that it cannot be fixed with mathematical exactness. In such instances, it is not necessary that a witness testify directly as to the amount of disability fixed by the commissioner in order to sustain such finding. *Yeager*, 253 Iowa at 376, 112 N.W.2d at 303.